A06A1835. GOSWICK v. MURRAY COUNTY BOARD OF
EDUCATION et al.
(636 SE2d 133)

BLACKBURN, Presiding Judge.

In this workers' compensation case, Wayne Goswick appeals an administrative law judge's decision (adopted by the Workers' Compensation Board and affirmed by the trial court) to suspend his disability payments because of his failure to undergo a physical examination requested by his employer (Murray County Board of Education) and ordered by the ALJ. We hold that OCGA § 34-9-202 authorized the ALJ's decision under these circumstances, and we therefore affirm.

The standard of review in workers' compensation appeals is clear:

> In the absence of legal error, the factual findings of the State Board of Workers' Compensation must be affirmed by the superior court and by the Court of Appeals when supported by any evidence in the administrative record. However, erroneous applications of law to undisputed facts, as well as decisions based on erroneous theories of law, are subject to the de novo standard of review.

(Citation and footnote omitted.) *Trent Tube v. Hurston.*[1]

Construed in favor of the ALJ's decision (which was adopted by the Board), the evidence shows that after experiencing a knee injury

---

[1] *Trent Tube v. Hurston*, 261 Ga. App. 525 (583 SE2d 198) (2003).

on the job in 2001 (exacerbated in 2002), Goswick began receiving disability payments from his employer and medical treatment from Dr. Herndon. Following lengthy treatment, Dr. Herndon determined that absent a knee replacement, no further medical treatment was at that time possible, and that Goswick should return to Dr. Herndon when Goswick felt such was necessary. Goswick ceased seeing Dr. Herndon, and disability payments continued.

Eighteen months later, the employer requested that Goswick return to Dr. Herndon at the employer's expense for an examination to determine his current medical status. Goswick refused, claiming he was not required to do so. Citing OCGA § 34-9-202, the employer moved the Board to compel Goswick to undergo the examination and to suspend benefits. Goswick responded, claiming that OCGA § 34-9-202 did not require him to undergo an examination by his treating physician. The ALJ assigned to the matter ruled in favor of the employer, finding Goswick's refusal unjustified and ordering Goswick to undergo the examination by Dr. Herndon.

Goswick refused to comply with the order. The employer moved for a suspension of benefits until Goswick complied with the order and further asked for its attorney fees in prosecuting the motion. Goswick responded by again claiming that OCGA § 34-9-202 did not require that he undergo an examination by his treating physician. The ALJ disagreed, holding that OCGA § 34-9-202 did authorize the examination and reiterating that Goswick was unjustified in refusing to undergo the ordered examination. The ALJ suspended Goswick's disability payments until he complied and further awarded the employer its attorney fees.

Goswick appealed the matter to the Board and also requested that (under the concept of supersedeas) the Board reinstate his benefits pending the appeal. The Board refused to reinstate benefits pending appeal and affirmed the ALJ's decision, adopting his opinion as its own. Goswick appealed the matter to the superior court, which held a timely hearing but did not enter an order within 20 days of the hearing. On March 1, 2006, the Board decision was affirmed by operation of law under OCGA § 34-9-105 (b). See *MacKenzie v. Sav-A-Lot Food Store.*[2] We granted Goswick's application for a discretionary appeal.

1. Goswick first claims that the ALJ erred in holding that OCGA § 34-9-202 authorized his employer to require Goswick to undergo a medical examination by his treating physician. Assuming that Dr. Herndon was Goswick's treating physician (even though he had not seen him in 18 months and no further treatment was planned), we

---

[2] *MacKenzie v. Sav-A-Lot Food Store*, 226 Ga. App. 32, 33 (1) (485 SE2d 559) (1997).

hold that the plain language of OCGA § 34-9-202 authorized the employer to require Goswick to undergo the exam by Dr. Herndon and thus authorized the ALJ to order Goswick to submit to such an examination.

OCGA § 34-9-202 (a) provides: "After an injury and as long as he claims compensation, the employee, if so requested by his employer, shall submit himself to examination, at reasonable times and places, by a duly qualified physician or surgeon designated and paid by the employer or the board." Subsection (c) authorizes the suspension of benefits for refusing to submit to such an exam. This language is plain and unambiguous. At his employer's request and expense, Goswick, who was continuing to receive compensation, was required to undergo an examination by "a duly qualified physician or surgeon" or face a suspension of benefits. Goswick does not dispute that Dr. Herndon was duly qualified; rather, he maintains that traditionally, such exams are done by "independent" physicians who are not treating the claimant, and that in the past the Board has not relied on this statute to compel an exam by the claimant's treating physician.

Goswick's arguments ignore the plain language of the statute, which only requires that the examining physician be duly qualified, not that the physician be independent nor that the physician not be treating the claimant. Goswick has presented no expert "term of art" evidence under OCGA § 1-3-1 (b) (assuming such were even admissible) that the words "duly qualified" exclude a treating physician, and therefore we attribute the ordinary signification to these words, which would include all duly qualified physicians, including those who may be treating the claimant. This accords with our obligation to strictly construe the workers' compensation statute. See *MacKenzie*, supra, 226 Ga. App. at 33 (1).

*Daniel v. Ford Motor Co.*[3] supports this conclusion. In *Daniel*, the Board found that the claimant had just undergone an employer-requested exam by another physician under OCGA § 34-9-202 (a) and therefore was not required to undergo a second employer-requested exam by the claimant's treating physician. We affirmed on the basis that under the circumstances, the Board had the discretion to make this determination. Id. at 64. See OCGA § 34-9-202 (c) (no suspension of benefits if "in the opinion of the board the circumstances justify the refusal"). At no point, however, did we intimate that OCGA § 34-9-202 (a) only applied to exams by nontreating physicians. To the contrary, the clear implication of *Daniel* is that OCGA § 34-9-202 (a) did authorize examinations by treating physicians and that had the Board so chosen, the Board could have ordered the exam there. We

---

[3] *Daniel v. Ford Motor Co.*, 88 Ga. App. 58, 62-64 (76 SE2d 66) (1953).

simply affirmed the Board's exercise of its discretion under the particular circumstances of that case to rule that the refusal to submit to the second exam by the treating physician was justified.

Citing *Garner v. Owens-Illinois Glass Container*,[4] Goswick points out that OCGA § 34-9-202 protects an employee's right to have his treating physician present during the employer-requested exam; therefore, argues Goswick, the employer-requested exam must be by a physician other than the treating physician. But this argument proves the opposite point. The subsection of OCGA § 34-9-202 which protects the right of the claimant to have another physician present describes that physician as "any duly qualified physician or surgeon." OCGA § 34-9-202 (b). Since, as conceded by Goswick, that physician may be claimant's treating physician, then subsection (a), which uses the same language ("a duly qualified physician or surgeon") in describing the physicians whom the employer may request perform the exam, necessarily also includes claimant's treating physician as a potential examiner.

Goswick then argues that a 2003 amendment to OCGA § 34-9-200 (c) shows a legislative intent that OCGA § 34-9-202 (a) did not intend to cover exams by treating physicians. Formerly, OCGA § 34-9-200 (c) provided that a claimant's unreasonable refusal to accept medical, surgical, or hospital care or other treatment ordered by the Board authorized the Board to suspend benefits. See note to OCGA § 34-9-200 (c). As argued by Goswick, the law distinguishes between treatment and examination. See *Hartford Accident &c. Co. v. Barfield*.[5] Thus, former OCGA § 34-9-200 (c) authorized the suspension of benefits for refusal to accept treatment ordered by the Board, and OCGA § 34-9-202 (a) and (c) authorized the suspension of benefits for refusal to submit to an examination requested by an employer. The statutes therefore did not overlap but dealt with distinct situations, which was the state of the law when Goswick was injured and which is the law Goswick throughout this litigation has adamantly maintained should be applied to his case. Accordingly, based on Goswick's own arguments, the 2003 amendment should play no role in determining his case.

Nevertheless, in 2003 the legislature amended OCGA § 34-9-200 (c) to address a claimant's refusal to submit to an examination rather than address his refusal to submit to treatment. OCGA § 34-9-200 (c) now reads:

---

[4] *Garner v. Owens-Illinois Glass Container*, 134 Ga. App. 917, 922 (4) (216 SE2d 709) (1975).

[5] *Hartford Accident &c. Co. v. Barfield*, 89 Ga. App. 562, 564 (80 SE2d 84) (1954).

As long as an employee is receiving compensation, he or she shall submit himself or herself to examination by the authorized treating physician at reasonable times. If the employee refuses to submit himself or herself to or in any way obstructs such an examination requested by and provided for by the employer, upon order of the board his or her right to compensation shall be suspended until such refusal or objection ceases.

Thus, the new statute overlaps with OCGA § 34-9-202, in that OCGA § 34-9-202 addresses employer-requested examinations by a duly qualified physician or surgeon and OCGA § 34-9-200 (c) addresses employer-requested examinations by the claimant's authorized treating physician (which appears to be a subset of duly qualified physician). Substantively, both statutes now authorize the suspension of benefits if a claimant refuses to submit to an employer-requested examination (OCGA § 34-9-202 if by a duly qualified physician and OCGA § 34-9-200 (c) if by the authorized treating physician).

Thus, prior to the 2003 amendment, the Board could suspend a claimant's benefits under OCGA § 34-9-202 if he refused to submit to an employer-requested exam by a duly qualified physician, which included his treating physician; after the 2003 amendment, the Board could suspend a claimant's benefits under either OCGA § 34-9-202 or 34-9-200 (c) if he refused to submit to an employer-requested exam by his authorized treating physician. The legislature's decision to change the subject of OCGA § 34-9-200 (c) to address examinations rather than medical treatment does not help Goswick's position. Moreover, as he would lose either way, whether the 2003 amendment applies to Goswick is not dispositive of this case.[6]

Accordingly, we hold that the ALJ and the Board (as affirmed by the superior court) did not err in suspending Goswick's benefits under OCGA § 34-9-202 (a) and (c).

2. Goswick next challenges the award of attorney fees to the employer. Such fees may be awarded "[u]pon a determination that proceedings have been . . . defended in whole or in part without

---

[6] We do note, however, that the suspension of benefits for refusing to submit to an examination would appear to fall in the category of remedy or procedure rather than in the category of substance and would therefore appear to retroactively apply to Goswick. See *Barnes v. City of Atlanta Police Dept.*, 219 Ga. App. 139, 141 (464 SE2d 609) (1995) (requirement that Board approval be sought for a change in physician or treatment deals not with the compensability of the claim but with the scope of the remedy and therefore applied retroactively); *Thompson v. Wilbert Vault Co.*, 178 Ga. App. 489, 491-492 (343 SE2d 515) (1986) (statute expanding treatment for employee applied retroactively). Thus, *Dallas v. Flying J, Inc.*, 279 Ga. App. 786, 790, n. 11 (632 SE2d 389) (2006), held in dicta that the 2003 amendment to OCGA § 34-9-200 (c) applies retroactively.

reasonable grounds." OCGA § 34-9-108 (b) (1). "Whether or not reasonable grounds for resisting [an ALJ ruling] exist is an issue of fact for the board to determine. However, attorney fees may not be awarded where the matter was closely contested on reasonable grounds." (Punctuation omitted.) *Brigmond v. Springhill Homes of Ga.*[7] Here, the ALJ and Board found that the matter was closely contested initially when Goswick tried to justify to the ALJ his refusal to comply with the employer's request for an examination by Dr. Herndon based on his argument that OCGA § 34-9-202 had not historically been applied to examinations by treating physicians. But when the ALJ ruled on April 27, 2005 that Goswick should submit to the examination and ordered him to do so, Goswick did not appeal that order to the Board under OCGA § 34-9-103 (a) but instead simply defied it, re-asserting as his justification in the subsequent sanctions proceedings that the ALJ was simply wrong in his reliance on OCGA § 34-9-202. We hold that his blatant defiance of an ALJ order which he chose not to appeal was some evidence that Goswick defended the proceedings in part without reasonable grounds.

Citing *Magnus Metal Division of Nat. Lead Co. v. Stephens*,[8] Goswick claims that he was required to defy the April 27 order so as to then present his justification for doing so. Specifically, Goswick argues that under *Magnus*, the Board was required to first order him to submit to the examination, and that upon his disobeying that order, the Board was then required to determine that his disobedience was unjustified before the Board could suspend his benefits.

Goswick confuses former OCGA § 34-9-200 (c), which was the subject of *Magnus*, with OCGA § 34-9-202, which is the subject of this case. Former OCGA § 34-9-200 (c) did require that the Board first order the claimant to receive treatment and that the Board then determine that disobedience of that order was unjustified before the Board could suspend benefits. See *Magnus*, supra, 115 Ga. App. at 433 (1). OCGA § 34-9-202 (and also current OCGA § 34-9-200 (c)) are structured differently from former OCGA § 34-9-200 (c) and do not require that the Board first order the examination. Rather, the refusal to comply with an employer's request is the first step, and the second step is the Board's determining whether that refusal is justified. A Board order which orders the claimant to submit to the examination is not required.

---

[7] *Brigmond v. Springhill Homes of Ga.*, 180 Ga. App. 875, 876 (350 SE2d 846) (1986).

[8] *Magnus Metal Division of Nat. Lead Co. v. Stephens*, 115 Ga. App. 432, 433 (1) (154 SE2d 869) (1967).

Here, Goswick refused to comply with his employer's request for an examination by Dr. Herndon, and he then presented his justification for noncompliance to the ALJ, who rejected that justification and ordered Goswick to undergo the examination. This was Goswick's chance to present his justification, which he could have reiterated to the Board in an appeal of that order to the Board under OCGA § 34-9-103 (a). Since Goswick failed to appeal the rejection of his grounds for justification, this gave the ALJ and the Board at least some evidence on which to base a finding of fact that when he contested the sanctions motion, he did so without reasonable grounds, for at that point the justification issue had already been determined and left unappealed. Based on this evidence, the ALJ and Board could find that Goswick could not reasonably defy the unappealed order requiring that he submit to the examination by Dr. Herndon and then expect to have a second chance before the Board to re-present his already-rejected justification grounds in the appeal of the order suspending his benefits.

Because some evidence supported the factfinding that Goswick defended the proceedings in part without reasonable grounds, we must affirm the attorney fees award under OCGA § 34-9-108 (b) (1). See *American Motorist Ins. Co. v. Corbett.*[9]

3. Goswick argues that the superior court erred in affirming the Board's refusal to require the employer to continue making disability payments pending the appeal proceedings. He reasons that supersedeas attached to the ALJ's order of suspension, thereby requiring the employer to continue making payments while the appeal was pursued. We disagree.

When an appeal of a workers' compensation award is filed, supersedeas does normally attach to the award, which generally relieves the employer from paying the award until the award is finally affirmed. *City of Macon v. Whittington.*[10] See *Ingram v. Liberty Mut. Ins. Co.*[11] However, the specific governing statute here speaks to the concept of when a suspension order is in effect, including the period of any appeal. OCGA § 34-9-202 (c) provides:

> If the employee refuses to submit himself to or in any way obstructs such examination requested by and provided for by the employer, his right to compensation and his right to take or prosecute any proceedings under this chapter shall be suspended until such refusal or objection ceases;

[9] *American Motorist Ins. Co. v. Corbett*, 144 Ga. App. 845, 847 (3) (242 SE2d 748) (1978).
[10] *City of Macon v. Whittington*, 170 Ga. 612, 615 (2) (154 SE 139) (1930).
[11] *Ingram v. Liberty Mut. Ins. Co.*, 63 Ga. App. 493, 495 (11 SE2d 499) (1940).

and *no compensation shall at any time be payable for the period of suspension* unless in the opinion of the board the circumstances justify the refusal or obstruction.

(Emphasis supplied.)

The broad language that "no compensation shall *at any time* be payable for the period of suspension" would necessarily include the period during which a suspension award is on appeal. Thus, the legislature has already made the policy decision for supersedeas not to attach pending the appeal of a benefit suspension order based on a refusal to undergo an examination. Indeed, *Trent Tube*, supra, 261 Ga. App. at 526, addressed an analogous case under OCGA § 34-9-240 (a), which uses similar "at any time" language in describing the period during which an employee is not entitled to benefit payments for failure to accept suitable employment. *Trent Tube* noted without comment that the employer there made no benefit payments after the Board issued its order suspending those payments for failure to accept suitable employment, even though the employee pursued an appeal to the superior court and then to the Court of Appeals. Thus, nonpayment of suspended benefits pending appeal is hardly a novel concept.

Moreover, here the employer was making payments and was authorized by the Board to cease making those payments. This is loosely analogous to an injunction case, in which a court orders a party to cease from an action. Of course, in injunction cases a notice of appeal does not serve as supersedeas. See *Citizens to Save Paulding County v. City of Atlanta.*[12] See generally OCGA § 9-11-62 (a). Thus, the court judgment issuing an injunction remains in force pending the appeal, unless an order of supersedeas is sought and obtained. Similarly, we hold that the ALJ and Board orders here, which did not award monies but rather relieved the employer from taking certain actions "at any time," remained in force pending the appeal in the absence of a special order of supersedeas.

4. The above rulings moot any remaining enumerations of error. *Judgment affirmed. Mikell and Adams, JJ., concur.*

DECIDED SEPTEMBER 1, 2006 — ▮

*Finn & Hurtt, Thomas M. Finn*, for appellant.
*Sponcler & Tharpe, Maurice Sponcler, Jr.*, for appellees.

---

[12] *Citizens to Save Paulding County v. City of Atlanta*, 236 Ga. 125 (223 SE2d 101) (1976).

*George & Wallach, Alex B. Wallach, Lee Southwell,* amici curiae.