A08A1846. HARRIS v. PEACH COUNTY BOARD OF
COMMISSIONERS.
(674 SE2d 36)

ELLINGTON, Judge.

In this workers' compensation action, an administrative law judge ("ALJ") for the State Board of Workers' Compensation granted Wendy Harris's claim for benefits after finding that she sustained an injury arising out of and in the course of her employment. After the Board's Appellate Division affirmed and adopted the decision of the ALJ, Harris's employer, the Peach County Board of Commissioners, appealed to the Superior Court of Peach County. The superior court concluded that the ALJ and the Board's Appellate Division misapplied the legal standard in determining whether Harris's injury arose out of her employment and reversed the award. Harris appeals, seeking reinstatement of the Board's decision.[1] For the following reasons, we reverse the decision of the superior court.

> On appeal from an award of the Appellate Division of the State Board of Workers' Compensation, this Court examines the record to see if there is competent evidence to support the award and construes the evidence in a light most favorable to the prevailing party. . . . Further, it is axiomatic that the findings of the State Board of Workers' Compensation, when supported by any evidence, are conclusive and binding, and that neither the superior court nor this court has any authority to substitute itself as a fact finding body in lieu of the board.

(Citations and punctuation omitted.) *Keystone Automotive v. Hall*, 292 Ga. App. 645, 647-648 (1) (665 SE2d 392) (2008). "The question of whether the trial court applied the correct legal standard in evaluating the evidence, however, is one of law, which we review de

---

[1] The Georgia Self Insurers Association, Inc. filed a brief as an amicus curiae. See Court of Appeals Rule 26.

novo." (Citation and punctuation omitted.) Id. at 647.

Construed in a light most favorable to Harris, the evidence demonstrates that, at the time of her injury, she worked as a custodian in the Peach County Courthouse. Her duties included cleaning floors, cleaning restrooms, and removing trash. After reporting to work on March 17, 2006, Harris took her cleaning cart and cleaned the restrooms and then went to get paper towels and tissues to restock the restrooms. On her way back to the restrooms, Harris stopped in the hall to discuss work issues with her supervisor. During the conversation, Harris realized a diuretic pill she had placed in her pocket was not there. Her supervisor saw a pill on the floor and pointed it out to Harris. Harris bent to pick up the pill, "heard something pop" in her left knee, and collapsed. She sustained an anterior dislocation of her knee, for which she has had two surgeries, and is temporarily disabled. At the hearing before the ALJ, Harris's supervisor testified that it was Harris's duty as a custodian to remove a foreign object such as the pill from the floor, regardless of whether the object was her own medication. Regarding the cause of Harris's injury, her doctor opined as follows:

> It was believed that her left knee dislocation was caused by an extreme weight being put on the knee and her reaching down to pick up a pill putting energy across her knee that caused her knee to dislocate and then land on her bottom. Typically this is a high-energy injury, but with her size this could potentially be enough force in the wrong position that it could cause this to occur.

The ALJ found that "the pressure of [Harris's] weight — slightly less than 300 pounds —" when she bent over "in [an] awkward position caused injury to her knee."[2] Because Harris was on duty at the time of the injury and because bending over to retrieve a foreign object from the floor was among the "peculiar duties of [her] job as a custodian," the ALJ found that Harris's injury arose out of and in the course of her employment. The Board's Appellate Division adopted the ALJ's findings of fact and conclusions of law. The superior court reversed after concluding that the hazard that resulted in Harris's injury did not arise in any part from her employment but arose solely from her obesity and that, "because she was equally exposed to the risk [of being injured by her obesity] both

---

[2] The superior court stated, incorrectly, that Harris's "physician opined that the *sole* cause of her injury was her weight, and the ALJ adopted that conclusion." (Emphasis supplied.)

on and off the job, she cannot properly say that her work caused her injuries." Harris contends the superior court failed to construe the evidence in her favor, substituted its own findings of fact for those of the Board, and erred in concluding that her injury was caused by a risk to which she would have been equally exposed apart from her employment.

To be compensable under the Workers' Compensation Act, an employee's accidental injury must arise both "out of . . . the course of the employment" and "in the course of the employment." OCGA § 34-9-1 (4).[3]

> The words "arising out of" mean that there must be some causal connection between the conditions under which the employee worked and the injury which she received. The causative danger must be incidental to the character of the employment, and not independent of the relation of master and servant. The accident must be one resulting from a risk reasonably incident to the employment. An accident "arises out of" employment when there is apparent to the rational mind, upon consideration of all the circumstances, a causal connection between the conditions under which the work is required to be performed and the resulting injury. Under this test, if the injury can be seen to have followed as a natural incident of the work, and to have been contemplated by a reasonable person familiar with the whole situation as a result of the exposure occasioned by the nature of the employment, then it arises "out of" the employment. But it excludes an injury which can not fairly be traced to the employment as a contributing proximate cause and which comes from a hazard to which the workman would have been equally exposed apart from the employment. The causative danger must be peculiar to the work.

(Citations omitted.) *Davis v. Houston Gen. Ins. Co.*, 141 Ga. App. 385, 386 (233 SE2d 479) (1977).[4]

---

[3] See *Mayor &c. of Savannah v. Stevens*, 278 Ga. 166 (1) (598 SE2d 456) (2004) (these are separate and distinct criteria, and an injury is not compensable unless it satisfies both).

[4] See also *Phillips Correctional Institute v. Yarbrough*, 248 Ga. App. 693, 695 (548 SE2d 424) (2001) ("It is well settled that work need be only a contributing factor to a heart injury in order for that injury to be compensable.") (footnote omitted); James B. Hiers, Jr. et al., Georgia Workers' Compensation Law & Practice (5th ed.), §§ 5-3 (Georgia cases largely merge three analytical approaches to the "arising out of" the course of the employment requirement: the increased-risk, the actual-risk, and the positional-risk doctrines); 5-5 (criteria for analyzing causal relationship between an injury and the conditions of employment).

YALE LAW LIBRARY

As the Peach County Board of Commissioners concedes, this case turns on whether Harris was performing a job duty at the time of the accident. It is undisputed that Harris sustained the injury to her knee when she bent over to pick up her pill from the courthouse floor. Thus, the causative danger was bending over to remove an object from the floor. Further, it is undisputed that her duties as a courthouse custodian specifically included removing debris from the floor. It is also undisputed that her supervisor required and expected her to remove the pill from the floor, regardless of whether it was her own pill. It follows that the Board was authorized to find that the causative danger was not independent of the employment relationship. Rather, there was evidence that bending over to remove an object from the courthouse floor was incidental to the character of Harris's employment as a custodian.

In reaching the contrary conclusion, that is, that Harris's injury did not arise out of her employment, the superior court relied primarily on *Chaparral Boats, Inc. v. Heath*, 269 Ga. App. 339 (1) (606 SE2d 567) (2004). In that case, the claimant tore cartilage in her knee while walking across her employer's premises to clock in for work. Id. The ALJ concluded that there was no connection between the claimant's job duties and the causative danger (walking) and denied benefits. Id. at 344 (1). The Board's Appellate Division adopted the ALJ's findings and conclusions. Id. The superior court reversed, and then this Court reversed, reinstating the administrative decision that the claimant's injury was not compensable. Id. at 348 (1). We find that the superior court in this case misapplied the holding in *Chaparral Boats*. It is true that walking, as in *Chaparral Boats*, and bending over to pick up an object, as in this case, are both mundane activities that ordinarily do not cause injury. But the operative question is whether the claimant performed the activity in furtherance of her job duties, and this is a question of fact that is committed to the factfinder at the administrative level.[5] In *Chaparral Boats*, the factfinder found that under the circumstances walking did *not* constitute an employment function, and we deferred to that finding. In this case, the factfinder found that under the circumstances bending over to pick up an object, even though it was the claimant's personal medication, *did* constitute an employment func-

---

[5] See *Nash v. Trust Co. of Ga.*, 131 Ga. App. 684, 684-685 (206 SE2d 566) (1974) (where an employee claimed that she felt a sting in her leg while walking at work and suffered a flare-up of her preexisting condition of thrombophlebitis, the Board denied her claim for benefits and the superior court affirmed; on appeal, this Court reversed with direction to remand the case to the Board on the basis that the Board denied the claim without making any finding of fact regarding whether the claimed accidental injury arose out of the claimant's employment).

tion, and, again, we defer to that finding because "the fact-finding body must in [each case] remain the final arbiter of the compensability of the [injury] and of whether the [claimant's] disability arose out of the employment as well as in the course of it." (Punctuation and footnote omitted.) *Phillips Correctional Institute v. Yarbrough*, 248 Ga. App. at 695-696.[6]

The fact that Harris's obesity helped produce her injury does not require a different result. Assuming, as the superior court apparently did, that Harris's obesity made it more likely that her act of bending over to remove an object from the floor would result in a dislocated knee only means that she was more prone than a typical employee to be injured by an activity that was incidental to her employment as a custodian. "It is well established that an employee need not be in perfect health or free from disease at the time he received the injury to recover under the Act; the employer takes his employee as it finds him and assumes the risk of a diseased condition aggravated by injury." (Citation omitted.) *Colonial Stores v. Hambrick*, 176 Ga. App. 544, 546 (3) (336 SE2d 617) (1985) (a claimant's lung infection was compensable, even though he had a preexisting lung disease, where the preexisting disease was aggravated by his employment duties which required him to move frozen foods into and out of a large freezer).

> Every workman brings with him to his employment certain infirmities[.] . . . Compensation is not made to depend upon the condition of the health of the employee, or upon his freedom from liability to injury through a constitutional weakness or latent tendency; compensation is awarded for an injury which is a hazard of the employment, and it is the hazard of the employment acting upon the particular employee in his condition of health and not what that hazard

---

[6] See also *Phillips Correctional Institute v. Yarbrough*, 248 Ga. App. at 694-696 (deferring to the Board's finding that the claimant's employment had exposed him to the conditions that resulted in a heart attack); *Sutton v. B & L Express*, 215 Ga. App. 394, 395 (1) (450 SE2d 859) (1994) (deferring to the Board's finding that the claimant's employment had not exposed him to the conditions that resulted in a heart attack); *A & P Transp. v. Warren*, 213 Ga. App. 60, 62-64 (443 SE2d 857) (1994) (deferring to the Board's finding that the claimant's employment had exposed him to the conditions that resulted in a heart attack); *Davis v. Houston Gen. Ins. Co.*, 141 Ga. App. at 386-387 (deferring to the Board's finding that a nurse's aide was not performing any job duty when she reached her arm back to put on her outer coat while preparing to leave work and, therefore, her injuries did not arise out of her employment); *Teems v. Aetna Cas. & Surety Co.*, 131 Ga. App. 685, 685-686 (206 SE2d 721) (1974) (deferring to the Board's finding that, because the claimant was injured during a break when she was free to use time for her own individual affairs and she was walking from her work station to see a public health official to follow up on a tuberculin test she voluntarily took a few days earlier, the claimant's injuries did not arise out of her employment).

would be if acting upon a healthy employee or upon the average employee.

(Citation and punctuation omitted.) *Griggs v. Lumbermen's Mut. Cas. Co.*, 61 Ga. App. 448, 452-453 (6 SE2d 180) (1939), aff'd, *Lumbermen's Mut. Cas. Co. v. Griggs*, 190 Ga. 277 (9 SE2d 84) (1940).[7] Thus, compensation is authorized under the Act "where an existing ailment is accelerated by the employment," so long as "the accident grew out of and in the course of the employment." Id. at 289. Harris's predisposition to dislocate her knee, per se, does not render her job-related injury noncompensable.[8]

Furthermore, the fact that Harris could have been injured in a similar manner away from work does not require a different result. Although Harris might have dislocated her knee at home by bending over to pick up a pill, the fact remains that she was carrying out job duties when she was injured in that way.[9]

Finally, the fact that Harris might have been planning to take the pill after she retrieved it from the floor does not require a different result.

Acts of ministration by a servant to himself, such as quenching his thirst [or] relieving his hunger, are incidents to his employment and acts of service therein within the

---

[7] See also *American Mut. Liability Ins. Co. v. Gunter*, 74 Ga. App. 500, 516 (2) (40 SE2d 394) (1946) ("Where a diseased condition of an applicant for compensation, which existed at the time of the injury, is aggravated or caused to "flare up" as a result of the injury, and produces a disability which otherwise might not have existed as a result of the injury, the incapacity is caused by the injury, and[,] where the accident arises out of and in the course of the employment, compensation will not be denied upon the ground that the disability is a result of the disease.") (citation and punctuation omitted).

[8] See also *Phillips Correctional Institute v. Yarbrough*, 248 Ga. App. at 694-696 (a claimant's heart attack was compensable, even though he was predisposed to it by his obesity and systemic hypertension, because the physical and mental stress he experienced on the day of his heart attack as a result of his work as a prison guard was a contributing precipitating factor to his heart attack); *A & P Transp. v. Warren*, 213 Ga. App. at 63-64 (a claimant's heart attack was compensable, even though he was predisposed to it by his obesity, lack of exercise, poor nutrition, and smoking, because the nature of his employment as a long-haul truck driver required long periods of stress without physical exercise and without access to a healthy diet, "all exacerbated by time constraints"); OCGA § 34-9-1 (4) ("injury" and "personal injury" shall not "include heart disease, heart attack, the failure or occlusion of any of the coronary blood vessels, stroke, or thrombosis unless it is shown by a preponderance of competent and credible evidence, which shall include medical evidence, that any of such conditions were attributable to the performance of the usual work of employment"); Georgia Workers' Compensation Law & Practice, §§ 6-2 (compensability of heart attacks and strokes); 6-5 (compensability of injuries from idiopathic causes).

[9] In its appellate brief, the Peach County Board of Commissioners, Harris's employer, concedes that, if an obese painter drops his paint brush while painting at work, bends over to pick it up, and in the process suffers a back injury, the claim is compensable.

work[ers'] compensation acts, though they are only indirectly conducive to the purpose of the employment. Consequently no break in the employment is caused by the mere fact that the work[er] is ministering to his personal comforts or necessities to procure drink, refreshments, [or] food.

(Citation and punctuation omitted.) *Employers' Liability Assurance Corp. v. Pruitt*, 63 Ga. App. 149, 151 (1) (10 SE2d 275) (1940). See also Georgia Workers' Compensation Law & Practice, §§ 5-8 (claims may be compensable despite slight deviation from course of employment for purposes of the employee's own); 5-22 (criteria for application of a rest-break defense). We find that, like taking a drink of water, taking required medication constitutes ministering to one's personal necessities and will ordinarily result in no more than a slight deviation from the course of employment.[10]

Because the Board applied the correct legal standard in evaluating the evidence in this case, and because the evidence when construed in Harris's favor authorized the Board to find that her knee dislocation arose out of her employment, the superior court erred in reversing the award of benefits.

*Judgment reversed. Miller, C. J., and Blackburn, P. J., concur.*

DECIDED FEBRUARY 11, 2009 —
RECONSIDERATION DENIED FEBRUARY 20, 2009

*Knott & Lemon, Michael E. Lemon*, for appellant.
*Murphy & Sibley, Phillip A. Sibley*, for appellee.
*Moore, Ingram, Johnson & Steele, Robert D. Ingram, Rodney R. McColloch, Ryan G. Prescott*, amici curiae.

---

[10] The director of human resources for Harris's employer testified that employees were permitted to take medication or get a drink of water as needed while at work and that such activities can help an employee better perform his or her job.