### A11A2062. STOKES v. COWETA COUNTY BOARD OF EDUCATION.
(722 SE2d 118)

ELLINGTON, Judge.

In this workers' compensation action, an administrative law judge ("ALJ") for the State Board of Workers' Compensation granted Vanessa Stokes' claim for benefits after finding that she sustained an injury arising out of and in the course of her employment. The Board's Appellate Division reversed the ALJ's decision and denied benefits. Stokes then appealed to the Superior Court of Coweta County, which affirmed the decision of the Board. Pursuant to a granted application for discretionary appeal, Stokes appeals, seeking reinstatement of the ALJ's award. For the following reasons, we reverse and remand.

Pursuant to OCGA § 34-9-103 (a),

> [a]ny party dissatisfied with a decision of an [ALJ] of the trial division of the State Board of Workers' Compensation may appeal that decision to the appellate division of the State Board of Workers' Compensation which shall have original appellate jurisdiction in all workers' compensation cases.

---

The Appellate Division is authorized "to weigh the evidence [of record] and assess the credibility of witnesses[.]" (Citation and footnote omitted.) *Syntec Indus. v. Godfrey*, 269 Ga. 170, 171 (1) (496 SE2d 905) (1998).[1] If, after assessing the evidence of record, the Appellate Division determines that the findings of the ALJ were supported by a preponderance of the competent and credible evidence, the Appellate Division must accept the factual findings of the ALJ. Id. "But, if after assessing the evidence of record, the appellate division concludes that the award does not meet the statute's evidentiary standards, the appellate division may substitute its own alternative findings for those of the ALJ, and enter an award accordingly." (Punctuation and footnote omitted.) Id.

After a workers' compensation decision becomes final at the administrative level, the parties have a right of direct appeal to the superior court, pursuant to OCGA § 34-9-105 (b). *Ga. Mountain Excavation v. Dobbins*, 309 Ga. App. 155, 156 (710 SE2d 205) (2011). As a reviewing court, the superior court applies an any-evidence standard of review to the Board's findings of fact, construing the evidence in the light most favorable to the party prevailing before the Board, and lacks authority to substitute itself as a factfinding body in lieu of the Board. *Home Depot v. McCreary*, 306 Ga. App. 805, 808-809 (2) (703 SE2d 392) (2010); *Lowndes County Bd. of Commrs. v. Connell*, 305 Ga. App. 844, 844-845 (701 SE2d 227) (2010); *Harris v. Peach County Bd. of Commrs.*, 296 Ga. App. 225 (674 SE2d 36) (2009).[2] "[E]rroneous applications of law to undisputed facts, as well as decisions based on erroneous theories of law, [however,] are subject to the de novo standard of review" in the superior court. (Citation and punctuation omitted.) *Home Depot v. McCreary*, 306 Ga. App. at 808-809 (2). See also *Amedisys Home Health v. Howard*, 269 Ga. App. 656, 657 (605 SE2d 60) (2004) (Determinations of whether an injury or death are compensable under the Workers' Compensation Act are "mixed questions of law and fact.") (citation

---

[1] See also *Lowndes County Bd. of Commrs. v. Connell*, 305 Ga. App. 844 (701 SE2d 227) (2010) ("As a factfinder, the State Board is authorized to assess witness credibility, weigh conflicting evidence, and draw different factual conclusions from those reached by the . . . ALJ . . . who initially heard the dispute.") (citation and punctuation omitted).

[2] See OCGA § 34-9-105 (c):
  The findings made by the members within their powers shall, in the absence of fraud, be conclusive; but upon such hearing the court shall set aside the decision if it is found that:
    (1) The members acted without or in excess of their powers;
    (2) The decision was procured by fraud;
    (3) The facts found by the members do not support the decision;
    (4) There is not sufficient competent evidence in the record to warrant the members making the decision; or
    (5) The decision is contrary to law.

and punctuation omitted). "Where it affirmatively appears that the [Board's decision] is based upon an erroneous legal theory, and that for this reason the [B]oard has not considered all of the evidence in the light of correct and applicable legal principles, the case should be remanded to the [B]oard for further findings." (Citation omitted.) *Murph v. Maynard Fixturecraft*, 252 Ga. App. 483, 486 (2) (555 SE2d 845) (2001).

An appeal to this Court from a decision of a superior court reviewing a decision of the Board is not a matter of right but rather is discretionary. OCGA § 5-6-35 (a) (1). Appeals to this Court are governed by the same standards of review as appeals to the superior court under OCGA § 34-9-105. *Home Depot v. McCreary*, 306 Ga. App. at 808-809 (2); *Goswick v. Murray County Bd. of Ed.*, 281 Ga. App. 442 (636 SE2d 133) (2006); see also *Harris v. Peach County Bd. of Commrs.*, 296 Ga. App. at 225-226 ("The question of whether the trial court applied the correct legal standard in evaluating the evidence . . . is one of law, which we review de novo.") (citation and punctuation omitted).

Viewed in the light most favorable to the employer as the prevailing party, the record shows the following. Stokes was employed as head custodian at an elementary school, and one of her duties was to unlock and open the gates leading to the school parking lot before other employees arrived each morning. On May 3, 2010, Stokes drove up to the front gate at 5:45 a.m.; it was very dark and raining heavily. According to Stokes, she pulled her car as close to the gate as she could so that her headlights would shine on the lock. While she was unlocking the gate, her car began to roll downhill, away from the gate. Stokes ran toward the car in an attempt to stop it. She testified that trying to stop her car was not a decision but, "when [she] saw [her] car moving, [she] just went on instinct" and that she did not want to damage school property or her car. After taking just a few steps, Stokes tripped and fell. The car rolled over her left foot. The car stopped in a wooded area on school property. A few days after the accident, her foot had to be amputated.

To be compensable under the Workers' Compensation Act, an employee's accidental injury must arise both "out of" and "in the course of" his or her employment. OCGA § 34-9-1 (4).[3]

---

[3] See also *Mayor &c. of Savannah v. Stevens*, 278 Ga. 166 (1) (598 SE2d 456) (2004) (A workplace injury is not compensable unless it satisfies both of these independent and distinct criteria.); OCGA § 34-9-23 (The Workers' Compensation Act "shall be liberally construed only for the purpose of bringing employers and employees within the provisions of this chapter and to provide protection for both. . . . The provisions of [the Act] shall be construed and applied impartially to both employers and employees.").

> The words "arising out of" mean that there must be some causal connection between the conditions under which the employee worked and the injury which she received. The causative danger must be incidental to the character of the employment, and not independent of the relation of master and servant. The accident must be one resulting from a risk reasonably incident to the employment.

(Citation and punctuation omitted.) *Harris v. Peach County Bd. of Commrs.*, 296 Ga. App. at 227. See also *Ray Bell Constr. Co. v. King*, 281 Ga. 853, 855 (642 SE2d 841) (2007) (accord); *Employers Ins. Co. v. Wright*, 108 Ga. App. 380, 382 (133 SE2d 39) (1963) (An on-the-job injury is compensable "if after the event it is apparent to the rational mind that there is a causal connection between the conditions under which the employment was performed and the resulting injury.") (citations omitted); *Pike v. Maryland Cas. Co.*, 107 Ga. App. 49, 51 (129 SE2d 78) (1962) (An injury may arise out of the employment, even if the employee is injured while doing something that is beyond the scope of the employee's specific duties, where the employee has some discretionary authority and the employer has not instructed the employee that the act is forbidden.).

> The words "in the course of the employment" relate to the time, place, and circumstances under which the accident takes place, and an accident arises in the course of the employment when it occurs within the period of employment at a place where the employee may reasonably be in the performance of [her] duties and while [she] is fulfilling those duties or engaged in something incidental thereto.

(Citations and punctuation omitted.) *Ray Bell Constr. Co. v. King*, 281 Ga. at 854-855. "An injury to an employee occurring during working hours and on the employer's premises ordinarily and presumptively will be considered as arising out of and in the course of employment[.]" (Citations omitted.) *Miles v. Brown Transport Corp.*, 163 Ga. App. 563, 564 (294 SE2d 734) (1982).[4]

Under the deviation rule, "[w]here [an] employee breaks the continuity of [her] employment for purposes of [her] own and is

---

[4] See generally, John Bourdeau, Ga. Jurisprudence of Workers' Compensation, § 7:5 (updated June 2011) (Generally, the positional risk doctrine provides that an injury is compensable so long as the employee's work required him or her to be in the particular location when peril struck.); James B. Hiers, Jr. et al., Ga. Workers' Compensation Law & Practice, § 5-3 (5th ed.) (Georgia cases largely merge three analytical approaches to the "arising out of" the course of the employment requirement: the increased-risk, the actual-risk, and the positional-risk doctrines).

injured before [she] brings [herself] back into the line of employment, [her] injury does not arise out of or in the course of [her] employment[.]'' (Citation omitted.) *Gen. Accident &c. Corp. v. Prescott*, 80 Ga. App. 421, 423 (1) (56 SE2d 137) (1949).[5] Our courts have found such a deviation from employment when an employee leaves the employer's premises to go home or to a restaurant for a meal,[6] runs a personal errand such as going to a shop,[7] or, while traveling on business, goes on an excursion solely for personal entertainment.[8] An injury that occurs during a time when the employee is off duty and is free to do as he or she pleases and when the employee is not performing any job duties is not compensable under the Workers' Compensation Act. *ATC Healthcare Svc. v. Adams*, 263 Ga. App. 792, 793-795 (589 SE2d 346) (2003); *Blair v. Ga. Baptist &c., Inc.*, 189 Ga. App. 579, 582 (2) (377 SE2d 21) (1988); *Aetna Cas. &c. Co. v. Honea*, 71 Ga. App. 569, 572 (1) (31 SE2d 421) (1944).[9]

---

[5] See also *Olde South Custom Landscaping v. Mathis*, 229 Ga. App. 316, 318 (494 SE2d 14) (1997) (''[W]hen an employee steps aside from his employer's business to do some act of his own, not connected with his employer's business, the relationship of employer and employee, or master and servant, is, as to that act, completely suspended, and an accident occurring at that time, resulting in injury to the employee, does not arise out of the employment within the meaning of the [Workers'] Compensation Act.'') (citation and punctuation omitted); see, e.g., *American Mut. &c. Ins. Co. v. Lemming*, 187 Ga. 378, 380-381 (200 SE 141) (1938) (An employee deviated from his employment as a repairman for a mill, when he helped build a turkey pen in woods adjacent to the company's property, at the request of the company's president, who raised turkeys as a hobby.); see generally John Bourdeau, Ga. Jurisprudence of Workers' Compensation, § 7:10 (updated June 2011) (deviation from employment); James B. Hiers, Jr. et al., Ga. Workers' Compensation Law & Practice, § 5-8 (5th ed.) (deviation from employment).

[6] See, e.g., *ATC Healthcare Svc. v. Adams*, 263 Ga. App. 792, 793-795 (589 SE2d 346) (2003) (An employee's injury from falling at a restaurant did not arise out of her employment because it occurred during a scheduled lunch break when the employee was free to use her time in any manner she wished and while the employer exercised no control over her activities.); *Ladson Motor Co. v. Croft*, 212 Ga. 275, 277-278 (92 SE2d 103) (1956) (A watchman deviated from his employment when he left his employer's premises and walked to a fruit stand to drink coffee.); *Ansa Mufflers Corp. v. Law*, 192 Ga. App. 45 (383 SE2d 574) (1989) (An operations manager deviated from his employment when he was driving home for lunch in his personal car. The employee testified that he was not on an errand for his employer at the time and that he would take up his employment duties again after lunch.).

[7] See, e.g., *Iso-Graphics, Inc. v. Evans*, 205 Ga. App. 880, 881-882 (424 SE2d 24) (1992) (An employee deviated from her employment when she drove to an auto repair shop to pick up a fellow employee, who was the son of the company president and who had left his personal car there for repairs.); *Aetna Cas. &c. Co. v. Honea*, 71 Ga. App. 569, 572 (1) (31 SE2d 421) (1944) (Where an employee was free to go where and do what she pleased during her lunch hour, she deviated from her employment when, at the beginning of her lunch hour, she departed her work station on her way to a hairdresser.).

[8] See, e.g., *U. S. Fidelity &c. Co. v. Skinner*, 188 Ga. 823, 829-830 (5 SE2d 9) (1939) (A traveling salesman deviated from his employment when, while traveling to Savannah to meet with his supervisor at the company's main office, the salesman and a fellow employee were spending free time before the meeting to drive to Tybee Island to eat a seafood dinner and to see the ocean.).

[9] Cf. *Edwards v. Liberty Mut. Ins. Co.*, 130 Ga. App. 23, 24 (2) (202 SE2d 208) (1973) (An unscheduled break to use the restroom out of necessity is not time that is released to an

In reversing the ALJ's award of benefits in this case, the Board concluded that the accident did not arise out of Stokes' employment. The Board found that Stokes' job duties included opening the gate, unlocking the building, emptying trash cans, sweeping, and so on, but did not include "going after a moving vehicle." When Stokes turned away from the gate, after putting her key in the gate's lock, and pursued her car, the Board found, she "undertook a personal mission, in pursuit of [her] personal property, not connected to her duties with the [e]mployer." In addition, the Board found that Stokes did not pursue the car in an attempt to prevent injury to herself or another employee or damage to the employer's property.

Under the circumstances presented, we conclude that the Board's decision was based upon an erroneous theory regarding what conduct constitutes a deviation from employment that will bar compensation under the Act. It is undisputed that, at the instant Stokes' car began to roll, she was on duty (not on break); she was physically located precisely where her job duties required her to be at that time, that is, at the driveway gate; and, she was unlocking the gate, a task required by her job duties and of benefit to the employer. Indeed, but for the necessity that she stop her car on the sloped driveway and exit the car to open the gate, the accident would not have occurred. This is not a case where an employee consciously decided to take advantage of a break in her work day, when she was free to do as she pleased, to run a personal errand. Rather, Stokes responded instinctively and instantaneously to an unexpected and dangerous situation that arose directly out of the performance of her job duties. Although it appears that, as luck would have it, no one would have been hurt, and no school property would have been damaged, if Stokes had had the presence of mind to simply stand and let the car roll away,[10] it contravenes the humanitarian purpose of the Workers' Compensation Act[11] and distorts the definition of a deviation from employment to say that her attempt to stop the

---

employee "as free time during which he may do as he will[,]" and, therefore, "it cannot be construed as an altogether personal pursuit" that does not arise out of and in the course of his employment.).

[10] See *Globe Indem. Co. v. Legien*, 47 Ga. App. 539, 540 (2) (171 SE 185) (1933) (An employee does not deviate from "his employment if, when confronted with a sudden emergency, he steps beyond his regularly designated duties in an attempt to save himself from injury, to rescue another employee from danger, or to save his employer's property.") (citation and punctuation omitted); see generally John Bourdeau, Ga. Jurisprudence of Workers' Compensation, § 7:13 (updated June 2011) (emergencies).

[11] *Ray Bell Constr. Co. v. King*, 281 Ga. at 854 ("The Workers' Compensation Act in Georgia is intended to have broad application so as to cover a wide variety of injuries and the pain and suffering incident to such injuries. It is a humanitarian measure which should be liberally construed to effectuate its purpose.") (citations and punctuation omitted).

rolling car was a purely personal mission.[12] Because it affirmatively appears that the Board's decision was based upon an erroneous legal theory, the judgment of the superior court affirming the decision of the Board is reversed with direction that the case be remanded to the Board for action in accordance with what is stated in this opinion. *Murph v. Maynard Fixturecraft*, 252 Ga. App. at 486 (2); *Ocean Accident &c. Corp. v. Bates*, 104 Ga. App. 621, 621-622 (122 SE2d 305) (1961).

*Judgment reversed and case remanded with direction. Doyle, P. J., and Miller, J., concur.*

DECIDED JANUARY 11, 2012 — ■■■■■■■■■■

*Dennis, Corry, Porter & Smith, Harold W. Whiteman, Jr.*, for appellant.

*David W. Willis*, for appellee.

---

[12] *Amedisys Home Health v. Howard*, 269 Ga. App. at 657-658 (A 24-hour on-call field nurse did not deviate from her employment when, after completing her patient visits and while still on-call, she picked up a pizza for her family's dinner and went home, with the intention of completing time-sensitive paperwork for her employer there.); *Graves v. Builders Steel Supply*, 186 Ga. App. 736, 737 (368 SE2d 188) (1988) (An employee did not deviate from his employment when he attempted to repair a drill press which had been used by a fellow employee but which the claimant was not authorized to use. The repair would have benefitted the employer, and "the gap between [the] claimant's regular work and the repair of the drill press [was] narrow enough to conclude that the attempted repair was an incident of [the] claimant's regular work.") (citations omitted); *Hartford Accident &c. Co. v. Souther*, 110 Ga. App. 84, 85 (3) (137 SE2d 705) (1964) (A tow truck operator did not deviate from his employment when, after delivering a disabled vehicle to its appointed place and while en route back to the garage, he stopped at the place where he had picked up the car to see whether a ring he had lost during the service call was lying there.); cf. *Montgomery v. Maryland Cas. Co.*, 169 Ga. 746, 747 (6) (151 SE 363) (1930) (Because a watchman had his dog at work for companionship and not at his employer's instruction or in furtherance of his job duties, the watchman's death as a result of trying to rescue the dog after it fell in the river did not arise out of and in the scope of his employment.).