**FIRST DIVISION**
**BARNES, P. J.,**
**PIPKIN and LAND, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

**May 24, 2023**

# In the Court of Appeals of Georgia

A23A0290. LILIENTHAL v. JLK, INC. et al.

LAND, Judge.

We granted discretionary review of the superior court's order affirming the decision of the Appellate Division of the State Board of Workers' Compensation denying Linda Lilienthal's (the "employee") motion for a change of physician.[1] At issue is whether the panel of physicians offered by her employer was prominently posted upon the work site's premises at the time of the employee's compensable job-related injury as required by OCGA § 34-9-201 (c). For the following reasons, we reverse and remand.

---

[1] The Georgia Legal Foundation filed an amicus curiae brief in support of the employee.

Pursuant to OCGA § 34-9-103 (a), "[a]ny party dissatisfied with a decision of an administrative law judge in the trial division of the State Board of Workers' Compensation may appeal that decision to the State Board of Workers' Compensation which shall have original appellate jurisdiction in all workers' compensation cases." "If, after assessing the evidence of record, the Appellate Division determines that the findings of the ALJ were supported by a preponderance of the competent and credible evidence, the Appellate Division must accept the factual findings of the ALJ." (Citation omitted.) *Stokes v. Coweta County Bd. of Ed.*, 313 Ga. App. 505, 506 (722 SE2d 118) (2012). After a workers' compensation case becomes final at this administrative level, a claimant has the right of direct appeal to the superior court, pursuant to OCGA § 34-9-105 (b). *Stokes*, 313 Ga. App. at 506. "As a reviewing court, the superior court applies an any-evidence standard of review to the Board's findings of fact, construing the evidence in the light most favorable to the party prevailing before the Board, and lacks authority to substitute itself as a factfinding body in lieu of the Board." (Citation omitted). Id. However, "[e]rroneous applications of law to undisputed facts, as well as decisions based on erroneous theories of law . . . are subject to the de novo standard of review." Id. An appeal to this Court from the decision of a superior court reviewing a decision of the Board is not a matter of right,

2

but rather is discretionary. OCGA § 5-6-35 (a) (1). And, appeals to this Court are governed by the same standards of review as appeals to the superior court under OCGA § 34-9-105. *Home Depot v. McCreary,* 306 Ga. App. 805, 807 (1) (703 SE2d 392) (2010). See also *Harris v. Peach County Bd. of Commrs.*, 296 Ga. App. 225 (674 SE2d 36) (2009) ("The question of whether the trial court applied the correct legal standard in evaluating the evidence . . . is one of law, which we review de novo") (citation and punctuation omitted).

The record shows that the employee began working as a preschool teacher for JLK, Inc. in March 2016. On July 15, 2019, the employee slipped and fell on a child's blanket in the classroom, injuring her left shoulder and both knees. When the employee asked to see a doctor, JLK's owner provided her with a photocopied copy of the panel of physicians.[2] The director then made an appointment for the employee at Academy Orthopedics because it was the option closest to her house and gave her a piece of paper with Academy's name and address handwritten on it. The employee testified that she did not know that she had the right to tell the director she did not

---

[2] An employer may satisfy its duty to furnish an injured employee with reasonably required medical treatment by maintaining a list of six physicians, known as the "panel of physicians," from which an employee can accept services. See OCGA § 34-9-201 (b) (1).

3

want to go to Academy Orthopedics or to Dr. Jonathan Katz. The employee received initial medical treatment from Dr. Katz at Academy Orthopedics on July 16, 2019, and continued treatment with him through February 2020.

Although the employee continued to work, she continued to suffer from significant pain despite Dr. Katz's treatment and physical therapy. Although the employee did not ask JLK's director for an appointment with any other physician, the employee sought an independent evaluation with Dr. Christopher Haraszti, a non-panel knee-specialist. Dr. Haraszti recommended that the employee would be a "good candidate for a right total knee arthroplasty." Based upon the condition of her left shoulder and left knee, Dr. Haraszti opined that she had achieved "maximal medical improvement," but still suffered significant impairments and thus, she should be placed on the following work restrictions: "no overhead activity"; "no lifting greater than 15 lbs;" and sedentary work only.

Accident Fund Insurance Company of America, JLK's workers' compensation insurance, provided the panel of physicians to be posted at the school. During their new hire orientation, JLK employees had to sign a "manual acknowledgment form" which stated where the panel of physicians was located. The evidence shows that the employee signed such a form on March 14, 2016. The ALJ, however, found that the

4

language of the Employee Manual Acknowledgment did not clearly explain where the panel is located or the function of the panel. The employee likewise testified that she never received a new hire orientation physically showing her the location of the panel of physicians or explaining its purpose.

The panel of physicians notice states, in bold language at the top of the document, that the notice "must be posted in a conspicuous place readily accessible to the employee at all times." The panel of physicians was posted inside the school's Resource Room, which is an art supply closet in the school's main corridor. The school's policy required the single door to the Resource Room to remain locked when not in use because there was certain equipment stored inside, such as a mechanical paper cutter, that could be harmful to a child. The only key to the Resource Room was located in a metal box inside a closed drawer of a desk used by the school's administration. The upper half of the door to the Resource Room is composed of a glass window panel. Although JLK argued at the hearing before the ALJ that the lights were not often kept off in the Resource Room, three of JLK's employees testified that the lights were kept off in the Resource Room when it was unoccupied. The employee testified that she rarely used the Resource Room because it did not contain supplies or materials that she needed for her classroom.

5

The employee sought a change of physician to Dr. Haraszti. See OCGA § 34-9-201 (e) ("upon the request of an employee . . . the board may order a change of physician as provided under [OCGA § ] 34-9-200"). A hearing was held before an administrative law judge on July 29, 2021. The employee acknowledged that Dr. Haraszti is not a panel physician, but contended that she was entitled to choose her own physician rather than have one appointed because the employer failed to post a copy of the panel of physicians in "prominent places upon the business premises" as required by OCGA § 34-9-201 (c).

After noting that "[t]here is not much case law on what constitutes 'prominent places upon the business premises,'" the ALJ found that while the employee "may not have gone into the Resource Room that often, she had access to that room. I do not find that the room being locked . . . [or] asking for the key precluded access. The room needed to be locked to keep children out and [the employee] . . . chose not to go into the room because, according to them, the room never, or rarely ever, contained the items that were supposed to be stocked there." The ALJ concluded that although the employee lunchroom may have been a preferable place to post the panel, "the fact that the panel was not in a better place does not mean that the place it was located was inadequate." Thus, the ALJ found that although JLK "did not post the

6

panel in the best place, . . . posting it in the Resource Room . . . was sufficient to satisfy OCGA § 34-9-201." Based upon that determination, the ALJ denied the employee's request to treat with Dr. Haraszti, a non-panel physician. The ALJ denied the requests for attorney fees, finding that both parties presented a closely contested dispute.

The employee appealed from the ALJ's order to the Appellate Division of the State Board of Workers' Compensation, and the employer/insurer filed a cross-appeal. After oral argument, the Appellate Division adopted the findings of fact, conclusions of law, and award issued by the ALJ.

The employee then appealed to the superior court. After oral argument, the superior court agreed with the ALJ that the panel "complied with the requirements of OCGA § 34-9-201" and denied the employee's request to be treated by a non-panel physician. The superior court did, however, note that the ALJ correctly concluded that Dr. Katz's treatment of the employee's knee condition was not adequate and that she is in "need of evaluation and care from a physician with a speciality in knee/lower extremity diagnosis and treatment" and that she should obtain that care from an orthopedic facility listed on the panel of physicians. The employee filed a discretionary appeal from the superior court's decision.

The employee contends that the Board erred in affirming the ALJ's ruling that the panel of physicians was posted in "prominent places upon the business premises" as required by OCGA § 34-9-201 when it was placed in the locked Resource Room.

OCGA § 34-9-200 (a) requires an employer to furnish an employee who suffers from an on-the-job injury with reasonably required medical treatment. OCGA § 34-9-201 (b) (1) allows the employer to satisfy that requirement by maintaining a list of at least six physicians from which an employee may accept services. Under OCGA § 34-9-201 (c), an employer is required to post this list, or panel, of physicians "*in prominent places upon the business premises.*" It is also required to take reasonable measures to ensure that employees understand the function of the panel and the employee's right to select a physician from the panel in the event of a workplace injury, and that the employee is given assistance in contacting a panel physician. (Emphasis supplied.) Id. If the employer fails to comply with of any the procedures for selection of physicians set forth in OCGA § 34-9-201 (c), an employee may select any physician to render service at the expense of the employer. OCGA § 34-9-201 (f). See *Brasher v. U. S. Xpress Enter., Inc.*, 328 Ga. App. 20, 23-24 (1) (761 SE2d 448) (2014) (employer's failure to post a panel of physicians or inform employee of his right to select a panel physician after his workplace injury entitled the employee to

8

choose his treating physician and to have employer pay for medical bills incurred from these visits and other unpaid medical bills); *Boaz v. K-Mart Corp.*, 254 Ga. 707, 710 (334 SE2d 167) (1985) ("[I]f the employer does not adequately meet the duty of providing treatment the employee may make other arrangements and once treatment by a physician is undertaken an employer may not change positions and cut off the right to such treatment").

At issue here is whether JLK placed the panel of physicians in "prominent places upon the business premises" as required by OCGA § 34-9-201 (c) when it placed the panel in the locked Resource Room that could be accessed only by a key located in a different room. Georgia's Workers' Compensation statute does not define what is meant by the phrase "prominent places," and our case law has not provided a clear definition. In interpreting a statute, "we must afford the statutory text its plain and ordinary meaning, we must view the statutory text in the context in which it appears, and we must read the statutory text in its most natural and reasonable way, as an ordinary speaker of the English language would." *Ware County Bd. of Ed. v. Taft*, 350 Ga. App. 848, 851 (830 SE2d 326) (2019). "Absent clear evidence that a contrary meaning was intended by the legislature, we assign words their ordinary, logical and common meanings." *Glanton v. State*, 283 Ga. App. 232, 233 (641 SE2d

9

234) (2007). "Prominent" is defined as "standing out or projecting beyond a surface or line, readily noticable; conspicuous,"[3] "immediately noticable"[4] and "situated so as to catch the attention; noticable."[5]

Here, the ALJ did not determine whether the panel of physicians posted in the Resource Room was in a "prominent" or conspicuous place. Rather, the ALJ held that the panel of physicians was *accessible* to the employee despite being in a locked storage room that she rarely entered during her employment there. But, *accessibility* is not the standard set by OCGA § 34-9-201 (c). Indeed, the legislature used the term "accessible" in other subsections of the same statute and declined to use it in subsection (c). See OCGA § 34-9-201 (a) (providing that the physicians listed on the panel of physicians be "reasonably accessible to the employee"). Had the general assembly meant to extend the notion of employee "accessibility" to the panel posting requirement set forth in OCGA § 34-9-201 (c), it would have done so in the manner used in OCGA § 34-9-201 (a). It did no such thing.

---

[3] *Merriam Webster's Collegiate Dictionary*, p.994 (11th Ed. 2003).

[4] *The American Heritage Dictionary*, p. 1410-1411 (5th Ed. 2018).

[5] *New Oxford American Dictionary*, p. 1397 (3rd Ed. 2010).

Based upon the above, we conclude that the ALJ erred by conflating the concept of accessibility with prominence. The fact that a panel is located in a technically "accessible" location does not mean that it is posted in a "prominent," conspicuous, or easily seen location. Indeed, under the facts of this case, the panel of physicians was not easily seen by most employees working upon the premises. In order to access the panel of physicians, an employee would have to go to the front office, find a key to the Resource Room in a locked box in the drawer of another employee's desk, turn on the lights, and enter the locked storage room. Indeed, the ALJ made no finding that most of JLK's employees went into that room on a regular basis.

An ALJ's decision "based on erroneous theories of law are subject to the de novo standard of review" by this Court. *Cartersville City Schools v. Johnson*, 345 Ga. App. 290, 292 (812 SE2d 605) (2018) (affirming the superior court's ruling setting aside the State Board of Workers' Compensation's reversal of an ALJ's decision when that reversal was based on errors in interpreting and applying the law of causation). Because "it affirmatively appears that the Board's decision is based upon an erroneous legal theory, and that for this reason the Board has not considered all the evidence in the light of correct and applicable legal principles," the judgment of the

11

superior court affirming the decision of the Board is "reversed with direction that the case be remanded to the Board for action in accordance with what is stated in this opinion." *Stokes,* 313 Ga. App. at 507, 511 (Because the Board's decision was based on an erroneous legal theory of what conduct constitutes a deviation from employment, the judgment of the superior court affirming the judgment of the Board is reversed with "direction that the case be remanded to the Board").

*Judgment reversed and case remanded. Barnes, P. J., and Pipkin, J., concur*.