### A09A1398. ST. JOSEPH'S HOSPITAL et al. v. WARD.
(686 SE2d 443)

SMITH, Presiding Judge.

In this discretionary appeal, St. Joseph's Hospital appeals from a superior court's order reversing a decision of the appellate division of the State Board of Workers' Compensation. For the reasons set forth below, we reverse.

In resolving this appeal,

> we must keep in mind the various standards of review applicable in this case. The Board's appellate division is authorized to review the evidence adduced before the ALJ, weigh that evidence, and assess witness credibility. If the appellate division determines that the preponderance of evidence supports the ALJ's decision, it will accept and affirm that award. But, if . . . the appellate division concludes that the award does not meet the applicable evidentiary standards, it may substitute its own alternative findings for those of the ALJ, and enter an award accordingly.

---

(Citations, punctuation and footnotes omitted.) *Dallas v. Flying J*, 279 Ga. App. 786, 787 (632 SE2d 389) (2006). When reviewing awards in workers' compensation cases,

> both the appellate court and the superior court must construe the evidence in the light most favorable to the party prevailing before the appellate division of the State Board of Workers' Compensation. "It is axiomatic that the findings of the State Board of Workers' Compensation, when supported by any evidence, are conclusive and binding."

(Citations and punctuation omitted.) *Ray Bell Constr. Co. v. King*, 281 Ga. 853, 854 (642 SE2d 841) (2007).

The record shows that Sandra Ward worked as a nurse for St. Joseph's Hospital and that she asserted workers' compensation claims for the following injuries: left knee (12/19/03), right knee (6/23/05), right knee (7/7/05), and both knees (9/16/05). Following a hearing in which medical records were submitted and only the employee testified, the ALJ acknowledged the four alleged accident dates and found that "the employee sustained a compensable accident on June 23, 2005, involving her right knee." This injury occurred when

> the employee went into a patient's room to give pain medication and while performing this task, she turned around to get the patient some water and twisted her right knee and felt a sudden pop in her right knee. The employee experienced an acute sudden onset of pain which immobilized her. . . . [S]he unsuccessfully attempted to return to her regular job on July 7, 2005. However, the employee was unable to complete her shift due to right knee pain. . . . [She] remained out of work until August 15, 2005, when [her employer] offered her a sit and greet position. The employee worked light duty until September 16, 2005, when she went out for right knee replacement.

The ALJ noted that since her surgery on September 19, 2005, the employee's doctor "has continued to hold the employee out of work. . . ."

The ALJ found "the evidence sufficient to show that the employee sustained a fictional new accident on September 16, 2005," the date when she was no longer able to continue working due to a gradual worsening of her condition at least partially attributable to her continued work after the June 23, 2005 injury. The ALJ made no

specific findings with regard to the compensability of any injuries to the employee's left knee.

St. Joseph's appealed to the appellate division of the State Board of Workers' Compensation. The appellate division concluded that the injury to the employee's left knee on December 19, 2003, was not compensable because it was barred by the statute of limitation. Based upon our opinion in *Chaparral Boats v. Heath*, 269 Ga. App. 339 (606 SE2d 567) (2004), the appellate division concluded that the June 23, 2005 injury to her right knee was not compensable "as the employee was not exposed to any risk unique to her employment by standing and turning, and that, in turning, she did not come into contact with any object or hazard of employment." The appellate division also noted that the employee returned to work for only one month in a light duty, sit-and-greet position and therefore "did not show that any subsequent trauma to her idiopathic right knee injury resulted from the performance of her job duties." One of the appellate division judges concurred specially and disagreed with the application of *Chaparral*, supra, but concluded that the denial of benefits was appropriate because the evidence showed that she was unable to continue working because of her preexisting arthritis.

The superior court concluded that the appellate division "misconstrued" *Chaparral*, supra, because the employee's

> injury directly resulted from the performance of her work duties of assisting a patient by turning to get the patient a cup of water. Injuring her knee while turning to get a cup of water for a patient is not a risk to which [the employee] would have been equally exposed to apart from her employment. Therefore, there was a causal connection between [the employee]'s injury and her employment duties, i.e., turning to get a patient a cup of water.

The superior court also concluded that "notwithstanding the appellate division's finding that the employee's December 19, 2003 injury to her left knee was barred by the statute of limitations, the undisputed facts establish a fictional new injury to the left knee as of September 16, 2005." Finally, the superior court also concluded in the alternative that "the employee sustained a work-related trauma injury as of September 16, 2005" because "[t]he undisputed facts as found by the board clearly show that employee's left and right knee condition gradually worsened in part due to her work duties and standing for long shifts."

1. St. Joseph's contends that the superior court exceeded its authority when it rejected the appellate division's application of *Chaparral*, supra, to the claim before it. We agree.

"For accidental injury to be compensable under the Workers' Compensation Act, the injury must not only occur in the course of the employment, but also must arise out of the employment. OCGA § 34-9-1 (4)." *Chaparral*, supra, 269 Ga. App. at 340 (1). "The test presents two independent and distinct criteria, and an injury is not compensable unless it satisfies both." (Citations and footnote omitted.) *Mayor &c. of Savannah v. Stevens*, 278 Ga. 166 (1) (598 SE2d 456) (2004).

In this case, the outcome turns on whether the employee "carried the burden of showing by a preponderance of the evidence that her accidental injury arose out of her employment." (Citations omitted.) *Chaparral*, supra, 269 Ga. App. at 340 (1). In *Chaparral*, supra, we held, in a whole court decision, that if an

> employee's injury was caused by a risk to which the employee would have been equally exposed apart from the employment, . . . the injury was not related to or caused by the peculiar nature of a condition of the employment. . . .
> Where that is the case, there is no causal connection between the employment and the injury, and the injury is not compensable because it did not arise out of the employment.

Id. at 343 (1). Based upon this rule, we concluded that an employee whose knee was injured while walking at work could not obtain workers' compensation benefits because "she was engaged in an effort (walking), which was a risk to which she was equally exposed apart from her employment." Id. at 343 (1).

Here, the employee's knee was injured when she turned around, and the appellate division concluded that she "was not exposed to any risk unique to her employment by standing and turning." Both this court and the superior court must defer to this "finding because the fact-finding body must in each case remain the final arbiter of the compensability of the injury and of whether the claimant's disability arose out of the employment as well as in the course of it." *Harris v. Peach County Bd. of Commrs.*, 296 Ga. App. 225, 229 (674 SE2d 36) (2009). Because the superior court substituted its own judgment for that of the appellate division on this issue, we must reverse its decision finding that the employee's injury on June 23, 2005 arose out of her employment.[1]

---

[1] Our opinion in *Harris*, supra, does not require a different result. In *Harris*, we deferred to the appellate division's finding that an injury did arise out of the claimant's employment. 296 Ga. App. at 228-229. Additionally, we noted evidence in that case from which the appellate division could have concluded that the claimant was engaged in activity to which she might not

2. We must also reverse the superior court's finding that "the undisputed facts establish a fictional new injury to the left knee as of September 16, 2005" or a "work-related cumulative trauma injury as of September 16, 2005." The facts with regard to these issues are disputed. As noted by an appellate division judge in a special concurrence:

> In response to a question as to whether the right and left knee conditions gradually worsened partially because of her work duties the physician did not check "yes" or "no," but wrote that she could no longer perform her duties due to arthritis. While the record shows that her arthritis was progressing and she experienced pain at work, the evidence does not show by a preponderance of evidence that the work duties or the flare up on June 23, 2005 are the underlying or contributing cause of the disability occurring in September of 2005.

Because the evidence on these issues was disputed, the superior court erred by reversing the Board's factual findings and concluding that the employee was entitled to benefits under an alternative theory.

3. The remaining enumerations of error before this court are rendered moot by our holdings above.

*Judgment reversed. Phipps and Bernes, JJ., concur.*

DECIDED NOVEMBER 9, 2009 ▮▮▮▮▮▮▮

*Swift, Currie, McGhee & Hiers, Todd A. Brooks, Daniel A. Kiefer*, for appellants.

*Shepard, Plunkett, Hamilton & Boudreaux, Daniel W. Hamilton, Christopher J. Hudson*, for appellee.

---

have been equally exposed apart from her employment. Specifically, the employee might not have bent down to pick up an object outside of work. Since she was employed as a custodian, however, she was obligated to pick up an object on the floor after it was pointed out to her by her supervisor. Finally, any statements in *Harris,* supra, that might be construed as contrary to our whole court decision in *Chaparral*, supra, are nonbinding dicta.