A10A1098. HUGHSTON ORTHOPEDIC HOSPITAL et al.
v. WILSON.
(703 SE2d 17)

POPE, Senior Appellate Judge.

Wanda Wilson sought workers' compensation benefits, alleging that her exposure to fumes from wallpaper glue and primer during the remodeling of her workplace resulted in permanent brain damage. The Appellate Division of the State Board of Workers' Compensation ("State Board") found that Wilson had not suffered a compensable work-related injury, but the superior court reversed the State Board's decision. Having granted the employer and its insurer's application for discretionary appeal, we reverse the superior court because there was some evidence to support the State Board's decision to decline to award benefits.

"In reviewing an award of workers' compensation benefits, both the superior court and this Court are required to construe the evidence in a light most favorable to the party prevailing before the

---

[6] See *Claxton Enterprise*, supra.

[7] *Richmond County Hosp. Auth. v. Southeastern Newspapers Corp.*, 252 Ga. 19, 21 (311 SE2d 806) (1984).

State Board." (Citation and punctuation omitted.) *YKK (USA), Inc. v. Patterson*, 287 Ga. App. 537 (652 SE2d 187) (2007). So viewed, the evidence showed that Wilson worked as a clinical technician for Hughston Orthopedic Hospital, taking vital signs, making beds, and assisting with patient baths. In May 2006, Wilson was assigned to a hospital floor where new wallpaper was being installed. On two occasions, Wilson felt sick from the fumes from the wallpaper glue and primer, but she was able to keep working. On May 25, 2006, however, the fumes left her unable to breathe and again feeling sick. Wilson was taken to the emergency room, where she fainted and was admitted to the hospital for further observation. According to Wilson, when she regained consciousness, she exhibited signs of brain injury, including that she could not talk, could not walk, and had a headache. During her hospital stay, however, Wilson underwent a battery of tests, all of which revealed normal brain functioning.

Following her discharge from the hospital, Wilson never returned to work. She saw numerous doctors, complaining of headaches, fainting episodes, dizziness, and difficulty speaking. Several follow-up neurological assessments and tests continued to show normal brain functioning. A neurologist who evaluated Wilson concluded that it was highly likely that her problems had a "psychogenic" or psychological — rather than physiological — origin.[1] At the request of her attorney, however, Wilson consulted with another neurologist, Dr. Larry Empting. Dr. Empting, who met with Wilson one time and did not conduct any tests, concluded that Wilson had a chemical sensitivity to the wallpaper materials and that the chemical exposure at work had caused lasting neurological problems.

Contending that her exposure to the fumes from the wallpaper chemicals had resulted in permanent neurological problems, Wilson filed a workers' compensation claim against the hospital and its insurer (the "Hospital Defendants"). The Hospital Defendants responded that Wilson's condition was not the result of her exposure to the fumes but rather was psychogenic in nature.

Following an evidentiary hearing, an administrative law judge ("ALJ") in the Trial Division of the State Board of Workers' Compensation rejected Wilson's claim for benefits in a detailed order. The ALJ, who had observed Wilson's demeanor and conduct while testifying, noted that Wilson "stuttered in a bizarre, sporadic pattern which appeared to be feigned," "would lapse into talking like a baby," "would speak in a very shrill, high pitched tone at times," and

---

[1] Psychogenic means "originating in the mind or in mental or emotional conflict." See Merriam-Webster's Online Dictionary, http://www.merriam-webster.com/medical/psychogenic.

"on several occasions sounded as though she were speaking in tongues." The ALJ found that Wilson appeared "psychiatrically disturbed" on the witness stand and concluded that her "entire testimony with its bizarre speech seemed feigned, contrived and grossly exaggerated." The ALJ pointed to the evidence in the record reflecting that Wilson's problems were psychogenic in origin rather than the result of chemical exposure and noted that Wilson had told a neuropsychologist that she was "seeing things" like "angels and her dead grandmother." Ultimately, the ALJ concluded that while Wilson may have had a temporary adverse reaction to the wallpaper chemicals, she had failed to prove by a preponderance of the evidence that her persistent symptoms and problems at issue in the case were caused by a work-related chemical exposure.

The State Board adopted the ALJ's findings and conclusions. Wilson, however, appealed to the Superior Court of Muscogee County, which reversed the State Board. The superior court found that the State Board had misconstrued the evidence and improperly substituted its lay opinion for that of the medical experts. The superior court remanded the case to the State Board for a retrial "before a different Administrative Law Judge." The Hospital Defendants then filed an application for discretionary appeal with this Court, which we granted.

1. The Hospital Defendants argue that the superior court erred in reversing the State Board's decision, given the any evidence standard of review that the superior court was obligated to apply in this context. We agree.

For an accidental injury to be compensable under the Workers' Compensation Act, the injury must arise out of and in the course of the employment. OCGA § 34-9-1 (4); *St. Joseph's Hosp. v. Ward*, 300 Ga. App. 845, 848 (1) (686 SE2d 443) (2009). "An injury arises out of one's employment where there is a causal connection between the employment and the injury." (Citation and punctuation omitted.) *Amedisys Home Health v. Howard*, 269 Ga. App. 656, 657 (605 SE2d 60) (2004). See *Chaparral Boats v. Heath*, 269 Ga. App. 339, 340 (1) (606 SE2d 567) (2004). The claimant carries the burden of establishing causation. *Lowndes County Bd. of Commrs. v. Connell*, 305 Ga. App. 844, 847 (1) (a) (701 SE2d 227) (2010). "Factual questions concerning causation are properly left to the [State] Board to determine" rather than to the superior court or the appellate courts, and the Board's findings must be affirmed if there is any evidence to support them. (Footnote omitted.) *City of Atlanta v. Roach*, 297 Ga. App. 408, 411 (1) (677 SE2d 426) (2009). See *YKK (USA), Inc.*, 287 Ga. App. at 537.

Here, there was some evidence to support the State Board's determination that Wilson's condition was not caused by a work-

related chemical exposure. The State Board found Wilson lacking in credibility, and it was not convinced by the testimony of Dr. Empting, the only physician who conclusively linked Wilson's symptoms to chemical exposure at work.[2] As the trier of fact, the State Board was authorized to make these determinations:

> It is within the province of the [State] Board to determine the weight and credit to be given to the testimony of the witnesses, including the opinion testimony of physician witnesses, and to resolve issues of fact arising from conflicts in the evidence. Furthermore, it is well settled that opinions of medical experts are advisory only and may be accepted or rejected by the [State Board].

(Citation and punctuation omitted.) *YKK (USA), Inc.*, 287 Ga. App. at 539 (2). See also *Reynolds Constr. Co. v. Reynolds*, 218 Ga. App. 23, 25 (459 SE2d 612) (1995) (fact finder may consider medical opinion testimony in the context of its own experience and completely disregard the expert opinion); *Dept. of Revenue v. Graham*, 102 Ga. App. 756, 759 (2) (117 SE2d 902) (1960) ("The weight and credit to be given to expert testimony is a question exclusively for decision by the fact-finding tribunal."). Additionally, there was evidence supporting the conclusion that Wilson's symptoms resulted from psychological problems, not a brain injury caused by chemical exposure. Numerous tests showed normal brain functioning, and at least one neurologist opined that Wilson's condition was highly likely to be psychological in origin.

In its order reversing the State Board, the superior court took issue with the ALJ's findings, adopted by the State Board, that Wilson's testimony "seemed feigned, contrived and grossly exaggerated" and that she appeared "psychologically disturbed" based upon her demeanor and conduct at the hearing. According to the superior court, there was no medical evidence or other testimony in the record to support these findings. But the trier of fact clearly is entitled to observe the demeanor and conduct of a witness while testifying and take these factors into account in assessing the credibility of the witness. See *McIlwain v. State*, 264 Ga. 382, 383 (3) (445 SE2d 261) (1994); *State v. Pettis*, 306 Ga. App. 203 (702 SE2d 39) (2010). Moreover, as noted above, there was independent medical evidence in the record supporting the conclusion that Wilson suffered from a

---

[2] Despite Wilson's claims to the contrary, there is no indication that the ALJ and State Board misinterpreted or misconstrued Dr. Empting's testimony. The ALJ and State Board acknowledged that Dr. Empting drew a connection between Wilson's symptoms and work-related chemical exposure, but simply gave this testimony little or no weight.

psychological rather than physiological problem.[3] Accordingly, the superior court's conclusions were misplaced.

For these reasons, the State Board was authorized to find that Wilson failed to meet her burden of establishing a causal connection between her condition and her employment. It is true that another factfinder might have reached a different conclusion, given Dr. Empting's testimony. But the record did not demand such a result, and at least some evidence supported the State Board's conclusions. Because the superior court improperly substituted itself as the factfinder in lieu of the State Board, the superior court's decision must be reversed. See *YKK (USA), Inc.*, 287 Ga. App. at 537. See also *Harris v. Peach County Bd. of Commrs.*, 296 Ga. App. 225, 229 (674 SE2d 36) (2009) ("[T]he fact-finding body must in each case remain the final arbiter of the compensability of the injury and of whether the claimant's disability arose out of the employment as well as in the course of it.") (citation, punctuation and footnote omitted).

2. We need not address the Hospital Defendants' remaining enumerations of error in light of our decision in Division 1.

*Judgment reversed. Barnes, P. J., and Senior Appellate Judge G. Alan Blackburn concur.*

DECIDED OCTOBER 19, 2010 —
RECONSIDERATION DENIED NOVEMBER 23, 2010 — 

*Wall & Elliott, Elton L. Wall, Claire Cronin*, for appellants.
*Morgan & Morgan, Ronald C. Conner*, for appellee.
*Rebecca E. Liner*, amicus curiae.

---

[3] In its order, the superior court also noted that the ALJ's decision, as adopted by the State Board, made a passing reference to the fact that Wilson had other family members who had suffered from psychological illness. The superior court concluded that the ALJ and State Board erred by improperly inferring that Wilson suffered from a psychological illness based upon her familial history. But since there was other far more significant medical evidence in the record that Wilson's problems were psychological in origin, namely, the assessment of a neurologist who evaluated her, any improper inference drawn from the familial history was harmless. See, e.g., *Bibb County v. Higgins*, 241 Ga. App. 161, 163 (2) (526 SE2d 379) (1999). Compare *Ga. Power Co. v. Leonard*, 215 Ga. App. 383, 385 (2) (451 SE2d 74) (1994).