**SECOND DIVISION**
**BARNES, P. J.,**
**ADAMS and MCFADDEN, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

**October 26, 2012**

# In the Court of Appeals of Georgia

A12A0884. DIXIE ROADBUILDERS, INC. et al. v. SALLET et al.

MCFADDEN, Judge.

Melvin Sallet died from injuries sustained in a shooting at a convenience store. His adult children and his estate brought a wrongful death action against Sallet's employer, Dixie Roadbuilders, Inc., and Dixie Roadbuilders' president and part-owner, Alton C. Walker, Jr., among others. Dixie Roadbuilders sought summary judgment on the ground that the action against it was precluded by the exclusive remedy provision of the Workers' Compensation Act. Walker sought summary judgment on the ground that he could not be held personally liable, as a corporate officer of Dixie Roadbuilders, for that company's alleged tortious acts. The trial court denied these motions, and we granted the defendants' application for interlocutory review.

We find that a factual question exists as to whether workers' compensation applies to Sallet's injuries, and we find that the plaintiffs may challenge the applicability of workers' compensation to those injuries, notwithstanding Dixie Roadbuilders' voluntary workers' compensation payment of Sallet's funeral expenses. Accordingly, we affirm the denial of summary judgment to Dixie Roadbuilders. We also find that a factual question exists as to whether, apart from Walker's role as a corporate officer of Dixie Roadbuilders, he also was the owner and operator of the Dixie Express convenience store and subject to potential liability in that capacity. Accordingly, we affirm the denial of summary judgment to Walker.

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. OCGA § 9-11-56 (c). "On appeal from the grant or denial of a motion for summary judgment, we review the evidence de novo, and all reasonable conclusions and inferences drawn from the evidence are construed in the light most favorable to the nonmovant." (Citation omitted.) *Spectera, Inc. v. Wilson*, __ Ga. App. __, __ (730 SE2d 699) (2012).

1. *Facts.*

So viewed, the evidence showed that Dixie Roadbuilders employed Sallet as a loader operator at its asphalt plant. Sometime during the afternoon of October 17, 2005, Sallet left the plant and drove to the nearby Dixie Express convenience store. While Sallet was at the store, a robbery occurred and he was shot. He subsequently died of his injuries.

The Dixie Express store is associated with Dixie Roadbuilders, but the relationship between the two entities is unclear from the evidence. Dixie Roadbuilders employed the store's workers, and one witness described the store as a division of Dixie Roadbuilders. One of Dixie Roadbuilders' co-owners deposed that Dixie Roadbuilders leased the store from another party. The other co-owner, Dixie Roadbuilders president Alton C. Walker, Jr., deposed that Dixie Roadbuilders owned the store. But Walker also represented himself to be the "owner/operator" of Dixie Express in sworn statements made in connection with the store's business license and occupational taxes. Although Dixie Roadbuilders' corporate secretary deposed that Walker signed those statements in his capacity as Dixie Roadbuilders' president, the documents do not reflect any relationship between Dixie Roadbuilders and Dixie Express.

The main purpose of the Dixie Express store was to provide a place near the plant for Dixie Roadbuilders trucks to refuel. The store also was open to the public and sold items such as drinks and snacks. Sallet often took an afternoon break to get a drink from the store. He did not need permission to do this, but would "just jump in his truck and go." On the day in question, Sallet did not tell his supervisor or any other person at Dixie Roadbuilders that he was leaving the plant. Various persons at Dixie Roadbuilders assumed he had taken a break to get a drink, however, because he had left his loader parked in the plant's yard rather than securing it under a shelter as was his usual practice when he left work for the day.

Sallet also was in the habit of stopping at the Dixie Express store before or after work. And, although he usually worked until 5 p.m., he would sometimes leave earlier if work was slow. There is evidence that he did not need permission to leave early, but also that he never left early without asking. He did not ask to leave early on the day of the shooting. But Sallet had made plans with one of his daughters for her to visit him at his house or call him at his house that afternoon, after her child got home from school.

After the shooting, Dixie Roadbuilders filed a claim with its workers' compensation insurance carrier. In response to this claim, the carrier made a payment

4

directly to the funeral home for Sallet's funeral expenses and a payment to the State Board of Workers' Compensation pursuant to OCGA § 34-9-265 (f). The plaintiffs, however, neither sought workers' compensation benefits from Dixie Roadbuilders nor requested that it file the claim with its insurance carrier. They did not know that the funeral costs had been paid by Dixie Roadbuilders' workers' compensation carrier but believed that these costs had been paid by a friend of Sallet.

2. *Questions of fact regarding the applicability of the Workers' Compensation Act preclude the grant of summary judgment to Dixie Roadbuilders.*

Dixie Roadbuilders argues that it is entitled to summary judgment because the exclusive remedy provision of the Workers' Compensation Act, OCGA § 34-9-11, precludes the plaintiffs' tort suit against it. The Workers' Compensation Act

> provides benefits to an employee injured in an accident arising out of and in the course of the employment. [OCGA § 34-9-1 (4).] The legislature has expressly codified its intent that the Act be liberally construed to bring both employers and employees within the [A]ct. [OCGA § 34-9-23.] Where the Act is applicable, its provisions are the exclusive remedy for the employee against the employer. [OCGA § 34-9-11.]

*Doss v. Food Lion*, 267 Ga. 312 (1) (477 SE2d 577) (1996).

Dixie Roadbuilders contends that the Act applies because Sallet's death arose out of and in the course of his employment. These are "two independent and distinct criteria, and an injury is not compensable [under the Act] unless it satisfies both." (Citation omitted.) *Mayor & Aldermen of the City of Savannah v. Stevens*, 278 Ga. 166 (1) (598 SE2d 456) (2004). An injury or death arises out of employment "when it is apparent to the rational mind, upon consideration of all the circumstances, that there is a causal connection between the conditions under which the work is required to be performed and the resulting injury." (Citations and punctuation omitted.) *Blair v. Georgia Baptist &c. Ministries*, 189 Ga. App. 579, 580-581 (1) (377 SE2d 21) (1988). Accord *Ray Bell Constr. Co. v. King*, 281 Ga. 853, 855 (642 SE2d 841) (2007). An injury or death arises in the course of employment "when it occurs within the period of the employment, at a place where the employee reasonably may be in the performance of [his] duties, and while [he] is fulfilling those duties or engaged in doing something incidental thereto. This statutory requirement relates to the time, place and circumstances under which the injury takes place." (Citation omitted.) *Burns Intl. Security Svcs. v. Johnson*, 284 Ga. App. 289, 292 (1) (b) (643 SE2d 800) (2007). Accord *Ray Bell Constr.*, 281 Ga. at 854-855. Whether an injury arises out

6

of and in the course of employment is generally a mixed question of law and fact. *Blair*, 189 Ga. App. at 581 (1).

Dixie Roadbuilders argues that Sallet's death satisfies both criteria as a matter of law. It bases this argument on its assertions that, when Sallet went to the Dixie Express store, he had not left work for the day and he was not on a personal pursuit. But, as explained below, the evidence as to both of these assertions is conflicting and consequently does not support a grant of summary judgment to Dixie Roadbuilders.

(a) *A question of fact exists as to whether Sallet had left work for the day.* First, there is conflicting evidence regarding whether, at the time of the shooting, Sallet had left work for the day or merely was on a break and planning to return to work. This issue is material to the applicability of workers' compensation (and thus the exclusive remedy provision) because

> [t]he hazards encountered by employees while going to or returning
> from their regular place of work, before reaching or after leaving the
> employer's premises, are not ordinarily incident to the employment, and
> for this reason injuries from such hazards are in most instances held not
> to be compensable as arising out of and in the course of the employment.

(Citation omitted.) *Harrison v. Winn Dixie Stores*, 247 Ga. App. 6, 7 (542 SE2d 142) (2000).

7

Dixie Roadbuilders argues that Sallet had merely taken a short break, pointing to evidence such as his practice of taking a mid-afternoon break, the fact that he did not seek permission to leave for the day, and the fact that he had left his loader in the plant yard, rather than securing it under a shelter for the night. But there also is evidence that Sallet had left work for the day, namely his practice of leaving early when work was slow, the fact that he did not need to seek permission to leave, and the fact that he had made plans with his daughter for that afternoon. From this conflicting evidence, a jury could find that Sallet had left work for the day when he was shot. (Given this conflicting evidence, and in light of the fact that the evidence rules in Georgia will be changing on January 1, 2013, we decline to address the admissibility of other evidence that, shortly before the shooting, Sallet told a friend on the telephone that he had left work for the day and was going to the store. ) Although there are several exceptions to the general rule that an injury is not compensable under workers' compensation when it occurs after an employee has left work, see *Harrison*, 247 Ga. App. at 7-8, the undisputed evidence does not show that any of those exceptions apply in this case.

We reject Dixie Roadbuilders' assertion that the Dixie Express store is analogous to the employer-owned parking lot in *Macy's South v. Clark*, 215 Ga. App.

8

661 (452 SE2d 530) (1994), such that an injury sustained on that premises by an employee leaving work for the day could be considered an injury arising out of and in the course of employment. The decision in *Macy's* was an application of the ingress and egress rule, and the employee in *Macy's* was in the employer-owned parking lot in the course of her egress from her workplace. See id. at 664 (2). Here, in contrast, Sallet's trip to the Dixie Express store was not part of his egress from his workplace. Had he chosen, after leaving work for the day, to stop at a nearby convenience store that was *not* affiliated with his employer, workers' compensation clearly would not apply. See generally *Harrison*, 247 Ga. App. at 7. We see no basis for a different outcome simply because, in this case, the convenience store was affiliated with the employer.

(b) *A question of fact exists as to whether Sallet's trip to the store was a deviation from his employment and therefore a personal pursuit.* Even if Sallet merely took a break when he went to the Dixie Express store, this does not demonstrate that the injury he sustained during that break arose out of and in the course of his employment. Georgia courts recognize the deviation rule, which provides that

9

when an employee steps aside from his employer's business to do some act of his own, not connected with his employer's business, the relationship of employer and employee, or master and servant, is, as to that act, completely suspended, and an accident occurring at that time, resulting in injury to the employee, does not arise out of the employment within the meaning of the Workers' Compensation Act.

(Citations and punctuation omitted.) *Olde South Custom Landscaping v. Mathis*, 229 Ga. App. 316, 318 (494 SE2d 14) (1997). Accord *Stokes v. Coweta County Bd. of Ed.*, 313 Ga. App. 505, 508-509 (722 SE2d 118) (2012). "Our courts have found such a deviation from employment when an employee leaves the employer's premises to go home or to a restaurant for a meal, *runs a personal errand such as going to a shop*, or, while traveling on business, goes on an excursion solely for personal entertainment." (Citations omitted; emphasis supplied.) *Stokes*, 313 Ga. App. at 509.

Dixie Roadbuilders asserts that the evidence demands a finding that Sallet's "trip to the Dixie Express store for a break was not a 'personal' pursuit outside the scope of his employment since the time was 'not released to him as free time' during which he could do as he wished." But the evidence showed that Sallet left his work premises without seeking his employer's permission, and there is no evidence to suggest that he was fulfilling a part of his work duties while he was at the Dixie

10

Express store, compare *Blair*, 189 Ga. App. at 582 (2), or that he was subject to being called back to work while he was at the store. Compare *Twin City Fire Ins. Co. v. Graham*, 139 Ga. App. 318, 319 (228 SE2d 355) (1976). To the contrary, Sallet's supervisor did not know his whereabouts.

Nevertheless, Dixie Roadbuilders argues that Sallet's trip to the Dixie Express store was not a personal pursuit because his breaks were not scheduled but depended on his workload. The cases Dixie Roadbuilders cites for this proposition, however, are inapposite, because they all involve employees who were at their workplace when they were injured during the break. See *Miles v. Brown Transport Corp.*, 163 Ga. App. 563 (294 SE2d 734) (1982) (an employee who fell on stairs at her workplace as she was in the process of leaving to take a lunch break had an injury arising out of and in the course of her employment, because she was injured during her work hours on her employer's premises, because the precise time of her lunch break was not scheduled, and because she often performed job-related duties during her lunch break); *Twin City Fire Ins. Co. v. Graham*, 139 Ga. App. at 319 (workers' compensation covered an injury that occurred during an operating room nurse's break, where the nurse had no scheduled breaks, could take breaks only when the operating room activities permitted, was not able to leave the premises during the

11

break, and was subject to being called back to the operating room at any time); *Edwards v. Liberty Mut. Ins. Co.*, 130 Ga. App. 23, 24 (2) (202 SE2d 208) (1973) (an injury sustained by an employee during an unscheduled bathroom break was covered by workers' compensation, because "the time [was] not released to [the employee] as free time during which he may do as he will and it cannot be construed as an altogether personal pursuit, as is the case during scheduled breaks").

Unlike the employees in the cases cited by Dixie Roadbuilders, Sallet did not stay on his work premises during his break, and there is no evidence that he was at the convenience store in furtherance of Dixie Roadbuilders' business. As such, the break resembled a personal pursuit, even though it was unscheduled. See *Ansa Mufflers Corp. v. Law*, 192 Ga. App. 45 (383 SE2d 574) (1989) (employee who was injured during his lunch break was not in the course of his employment at the time, even though he was allowed to eat lunch whenever he wanted rather than at a specific, scheduled time, where he had left work in his own car to go home for the break, he was not on an errand for his employer, and he was not going to conduct any further business until after the break). That the convenience store may have been owned, leased, or operated by Dixie Roadbuilders does not change the fact that it was not *Sallet's* work premises.

12

Under these circumstances, we cannot say as a matter of law that Sallet's trip to the store was not a personal pursuit outside the course of his employment at the asphalt plant. Rather, the evidence presents a question of fact as to whether Sallet deviated from his employment.

3. *The plaintiffs are not estopped from challenging the applicability of the Workers' Compensation Act.*

Dixie Roadbuilders argues that the plaintiffs cannot challenge the applicability of the Act (and, consequently, the exclusive remedy provision) in this case because they accepted workers' compensation benefits. The evidence shows that Dixie Roadbuilders instituted a workers' compensation claim on Sallet's behalf through its workers' compensation insurance carrier, and that the carrier made a payment to the funeral home and a payment to the state Workers' Compensation Board. This constituted a "voluntary payment" of workers' compensation benefits. See *Collins v. Grafton, Inc.*, 263 Ga. 441, 442 & n. 3 (1) (435 SE2d 37) (1993) ("The term 'voluntary payment' is used to denote workers' compensation benefits paid by an employer without an adjudication of the compensability of the underlying injury."). The plaintiffs did not request, and in fact were unaware, of this payment.

13

A party's acceptance of workers' compensation benefits can trigger the exclusive remedy provision and estop that party from denying that an injury was covered by workers' compensation. See, e.g., *Mann v. Workman*, 181 Ga. App. 211, 213 (1) (351 SE2d 680) (1986). In the case of a "voluntary payment," however, our Supreme Court has stated that

> an employer in a situation where coverage is questionable should not be able to voluntarily assume liability for the limited benefits of the Workers' Compensation Act and thereby avoid the potentially greater liability of a common-law action. Unbridled application of the doctrine of equitable estoppel cannot be a means by which the very purpose of the Act is thwarted. The successful continuation of the workers' compensation system requires that studied caution be exercised before the doctrine is applied against an injured party who does nothing more than receive compensation benefits voluntarily provided by an employer.

(Citation omitted.) *Collins*, 263 Ga. at 444 (3). Accordingly, the Court held in *Collins* that an employer's voluntary

> payment of some of [an injured employee's] medical bills directly to the medical personnel involved, in and of itself, [could not] estop [the employee] to deny compensability since her acceptance of partial payment of her medical expenses [was] not inconsistent with her

14

assertion of a tort claim, as [the employer] was potentially liable for the medical expenses under a common-law theory of negligence.

Id. at 443 (2).

Similarly, even if the plaintiffs could be viewed as having "accepted" the insurance carrier's payment of Sallet's funeral expenses despite being unaware that the carrier had paid them, their acceptance of the payment of funeral expenses is not inconsistent with their assertion of tort claims against Dixie Roadbuilders and does not estop them from contesting the applicability of workers' compensation coverage in this case. Id. Consequently, the payment of funeral expenses by Dixie Roadbuilders' insurance carrier does not authorize the grant of summary judgment to it on the theory of estoppel. Id. at 443-444 (2).

4. *Questions of fact exist as to Alton Walker's individual ownership interest in Dixie Express, precluding summary judgment on the ground that he is not liable in his role as a corporate officer.*

Walker argues that he is entitled to summary judgment because he is merely a corporate officer of Dixie Roadbuilders who cannot be held personally liable for his corporate principal's torts, in that he did not personally participate in the torts and no basis exists for piercing the corporate veil. We disagree.

15

The plaintiffs alleged that Walker breached duties imposed upon him by virtue of his role as the owner and operator of Dixie Express, not by virtue of his role as a corporate officer of Dixie Roadbuilders. See OCGA § 51-3-1 ("Where an owner or occupier of land, by express or implied invitation, induces or leads others to come upon his premises for any lawful purpose, he is liable in damages to such persons for injuries caused by his failure to exercise ordinary care in keeping the premises and approaches safe."). Whether Walker was the owner and operator of Dixie Express is a matter of dispute. Walker points to evidence that Dixie Express was either owned or leased and operated by Dixie Roadbuilders, and not by Walker individually. But the plaintiffs point to Walker's own sworn statements in which he identified himself as the "owner/operator" of Dixie Express. Although Walker now disputes the accuracy of those statements, his credibility on this point is a question for the factfinder, not an issue for this court to resolve on summary judgment. See *Harding v. Georgia Gen. Ins. Co.*, 224 Ga. App. 22, 25 (479 SE2d 410) (1996).

Walker argued before the trial court that he cannot be liable in his role as a corporate officer of Dixie Roadbuilders. He has not made any arguments regarding his potential liability as the "owner/operator" of Dixie Express, and we cannot consider whether Walker might be entitled to summary judgment for reasons not

16

argued before the trial court. See *Lowery v. Atlanta Heart Assoc.*, 266 Ga. App. 402, 405 (2) (597 SE2d 494) (2004) (we do not apply a "wrong for any reason" rule). Because a genuine issue of fact exists as to whether Walker was the "owner/operator" of Dixie Express, the trial court did not err in denying his motion for summary judgment.

*Judgment affirmed. Barnes, P. J., and Adams, J., concur.*