**WHOLE COURT**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**July 16, 2014**

# In the Court of Appeals of Georgia

A14A0265. CHAMBERS v. MONROE COUNTY BOARD OF
 COMMISSIONERS.

Boggs, Judge.

We granted claimant Pamela Chambers' discretionary application in this

workers' compensation case because it appeared that additional precedent in this area

would benefit the bench and bar, and for a review of the entire record to ensure that

the facts supported the Board's findings. After considering the record, including the

claimant's testimony, and given the deferential standard of review, the Board's

finding that Chambers' injury was not compensable because it was "idiopathic" – that

is, not "arising out of" her employment – was supported by some evidence and

therefore must be affirmed.

When reviewing awards in workers' compensation cases, both the
appellate court and the superior court must construe the evidence in the

light most favorable to the party prevailing before the appellate division of the State Board of Workers' Compensation. It is axiomatic that the findings of the State Board of Workers' Compensation, when supported by any evidence, are conclusive and binding.

(Citation, punctuation, and footnote omitted.) *Medical Office Mgmt. v. Hardee*, 303 Ga. App. 60, 61 (693 SE2d 103) (2010). So viewed, the evidence shows that on January 27, 2012, Pamela Chambers was employed as an firefighter/EMT for Monroe County. After returning from a call to the fire station, she sat down at a desk to complete some paperwork and then remained at the desk watching television. Her supervisor asked her to get up from the desk so that he could use it. When she rose from her chair, Chambers felt and heard a "pop" in her left knee. She continued to work, but as the pain increased she went to the emergency room. She had to have knee surgery and will probably have to have a knee replacement.

The ALJ found the injury compensable on the basis that Chambers was required to be in the location where she was injured and was following her supervisor's orders. The employer appealed, and the Appellate Division vacated the ALJ's award. It found "no evidence that the Employee slipped, tripped, or fell or came in contact with any object or hazard that increased her risk of injury," but that she simply rose from a seated position. The Appellate Division therefore concluded

2

that Chambers had failed to show a causal connection between her employment and her injury or that her injury arose out of her employment. The superior court affirmed, noting the deference it was required to give the findings of the Appellate Division, and finding that some evidence in the record supported the award. From this judgment, Chambers appeals.

The legal standard governing whether an injury "arises out of" employment is well established. In *Chaparral Boats, Inc. v. Heath*, 269 Ga. App. 339 (606 SE2d 567) (2004), a twelve-judge whole court decision[1], we held:

> Where the injury would have occurred regardless of where the employee was required to be located, and results from a risk to which the employee would have been equally exposed apart from any condition of the employment, there is no basis for finding a causal connection between the employment and the injury, and no basis for compensation under the positional risk doctrine. The general rule still applies that the injury does not arise out of the employment where the causative danger is not "peculiar to the work" in a way that causally connects the employment to the injury.

(Citations omitted.) Id. at 343. In *Chaparral Boats*, Heath was walking "at a quicker than normal pace" across her employer's parking lot in order to get to work on time

---

[1] Three judges concurred specially, agreeing with the result but contending that an earlier case need not be overruled. 269 Ga. App. at 349-350.

when she "felt popping and pain in her left knee." Id. at 339. "[T]he ALJ found upon review of the evidence that Heath's knee injury was not the result of a slip, trip, fall, or contact with any object, and that there was no evidence Heath claimed any particular cause. The evidence showed that, when the knee injury occurred, Heath was simply walking at a pace of her own choosing." Id. at 344 (1). Accordingly, we reversed the superior court's order concluding that the Board erred in denying benefits because the injury did not arise out of Heath's employment. Id. at 348.

Similarly, in *St. Joseph's Hospital v. Ward*, 300 Ga. App. 845 (686 SE2d 443) (2009), a nurse injured her knee when she turned to get a cup of water for a patient. Id. at 846. The Appellate Division found that "the employee was not exposed to any risk unique to her employment by standing and turning, and that, in turning, she did not come into contact with any object or hazard of employment." Id. at 847. Once again, we reversed the superior court for substituting its judgment for that of the Board. Id. at 848 (1).

At the hearing, Chambers testified that she did not get up from her chair in an unusual manner. She offered no testimony to establish any causal connection between her employment and her injury: for example, that the chair or desk configuration caused her to lose her balance or strain to reach a standing position, that a work-

4

related emergency such as a fire alarm caused her to jump out of the chair in a hurried manner, or that she came in contact with any object or hazard such as the desk, stairs, or a piece of equipment.

Chambers relies almost exclusively upon *Harris v. Peach County Bd. of Comm'rs*, 296 Ga. App. 225 (674 SE2d 36) (2009), arguing that we should apply across the board that case's affirmance of the Appellate Division's finding that the employee's activity arose out of employment. In *Harris*, the claimant, a custodian, dropped a pill on the floor. She injured her knee when she bent over to pick it up after her supervisor pointed it out to her. Id. at 226. The Board concluded that picking up objects from the floor was part of the claimant's duties as a custodian, but the superior court reversed, concluding that her injury arose solely from her obesity, which placed unusual strain on her knee. Id. at 226-227. We reversed the superior court's judgment, observing:

> [T]he operative question is whether the claimant performed the activity in furtherance of her job duties, and this is a question of fact that is committed to the factfinder at the administrative level. In *Chaparral Boats*, the factfinder found that under the circumstances walking did not constitute an employment function, and we deferred to that finding. In this case, the factfinder found that under the circumstances bending over to pick up an object, even though it was the claimant's personal

medication, did constitute an employment function, and, again, we defer to that finding because *the fact-finding body must in each case remain the final arbiter of the compensability of the injury and of whether the claimant's disability arose out of the employment* as well as in the course of it.

(Citations, punctuation, and footnotes omitted; emphasis supplied.) Id. at 228-229.[2]

While the dissent asserts that we nevertheless may review de novo the findings of the Board in the case before us, the cases cited do not support the assertion that the Board's determination of whether an injury "arises out of" employment is subject to de novo review. In *Renu Thrift Store v. Figueroa*, 286 Ga. App. 455 (649 SE2d 528) (2007), the compensability of an injury was not at issue. In deciding the appropriate benefits and penalties due a claimant after a unilateral suspension of benefits by the employer, we construed three statutory provisions of the Workers' Compensation Act governing a statute of repose, a penalty for delayed payment by the employer, and the award of attorney fees. And in *Thornton v. Hartford Accident &c. Co.*, 198 Ga. 786 (32 SE2d 816) (1945), our Supreme Court reversed this court and applied the broad

---

[2]The dissent is incorrect in asserting that a request or order from a supervisor renders a claim compensable as a matter of law, and we did not rely upon such a principle in *Harris*. There, as here, we explicitly deferred to the Board on the mixed question of law and fact as to whether an injury arose out of the claimant's employment.

6

"traveling salesman" rule to uphold the original finding of the Board, affirmed by the superior court, that the claimant's death from slipping on a wet street arose in the course of his employment. The court observed, "It has been so repeatedly held that where there is any competent evidence to sustain a finding by the board such finding is conclusive and binding on a reviewing court, that no citations are deemed necessary." Id. at 792. It held that the Board's original finding that the injury arose out of the claimant's employment "was authorized, and we think demanded, since the facts were undisputed." Id. at 795. It did not apply the principle of de novo review to *overturn* the Board's finding as to a mixed issue of law and fact, as to which deference to the Board's findings is required as in *Chapparral Boats* and *St. Joseph's*.

It is for this reason that *Harris* (which found that an injury was compensable) and *Chaparral Boats* and *St. Joseph's* (which found that it was not), present no question of law for de novo review. All are consistent in holding that the superior courts (and this court) may not substitute their judgment for that of the Board on the question of whether an injury arose out of the claimant's employment. To hold otherwise would work a dramatic alteration in our long-standing "any evidence" rule in this regard.

7

> An injury arises out of one's employment where there is a causal connection between the employment and the injury. The claimant carries the burden of establishing causation. Factual questions concerning causation are properly left to the State Board to determine rather than to the superior court or the appellate courts, and the Board's findings must be affirmed if there is any evidence to support them.

(Citations and punctuation omitted.) *Hughston Orthopedic Hosp. v. Wilson*, 306 Ga. App. 893, 895 (1) (703 SE2d 17) (2010). There, we reversed the superior court because some evidence supported the Board's finding that the employee had not suffered a compensable work-related injury.

Here, there was some evidence to support the Board's determination that Chambers' injury had no causal connection to her employment, and we may not disturb it. We therefore affirm the judgment of the superior court.

*Judgment affirmed. Ellington, P. J., Doyle, P. J., Dillard and Branch, JJ., concur. Barnes, P. J., and Miller, J., dissent.*

8

A14A0265. CHAMBERS v. MONROE COUNTY BOARD OF

COMMISSIONERS.

BARNES, Presiding Judge, dissenting.

Pamela Chambers injured her knee when her supervisor directed her to get up

from a desk so that he could complete some paperwork. In this context, where the

undisputed evidence shows that the employee was injured while undertaking a

physical activity at the express direction of her supervisor, the injury arose out of and

in the course of the employment *as a matter of law*, and the employee should receive

workers' compensation benefits. Because the majority concludes otherwise, I must

respectfully dissent.

"The Workers' Compensation Act in Georgia is intended to have broad

application so as to cover a wide variety of injuries and the pain and suffering

incident to such injuries." *Hennly v. Richardson*, 264 Ga. 355, 355-356 (1) (444

SE2d 317) (1994). It is "highly remedial in nature" and "must be construed liberally

in favor of the claimant in order to accomplish its beneficent purposes." (Citation and

punctuation omitted.) *CGU Ins.Co. v. Sabel Indus.*, 255 Ga. App. 236, 243 (2) (564

SE2d 836) (2002). See *Gassaway v. Precon Corp.*, 280 Ga. App. 351, 354 (634 SE2d

153) (2006) (workers' compensation system is "designed especially to protect

2

workers injured in the course of their work"). We must always bear these principles in mind when analyzing whether an accidental injury is compensable under the Act.

An accidental injury is compensable under the Workers' Compensation Act if the employee's injury arose out of and in the course of her employment. See OCGA § 34-9-1 (4); *Hughston Orthopedic Hosp. v. Wilson*, 306 Ga. App. 893, 895 (1) (703 SE2d 17) (2010). "These are two independent and distinct criteria, and an injury is not compensable under the Act unless it satisfies both." (Citation and punctuation omitted.) *Dixie Roadbuilders v. Sallett*, 318 Ga. App. 228, 231 (2) (733 SE2d 511) (2012). An injury arises "in the course of" the employment

> when it occurs within the period of the employment, at a place where the employee reasonably may be in the performance of [her] duties, and while [she] is fulfilling those duties or engaged in doing something incidental thereto. This statutory requirement relates to the time, place and circumstances under which the injury takes place.

(Citations and punctuation omitted.) Id. It is undisputed that Chambers' injury arose in the course of her employment, and thus that criteria has been satisfied.

"An injury arises 'out of' the employment when a reasonable person, after considering the circumstances of the employment, would perceive a causal

connection between the conditions under which the employee must work and the resulting injury." *Hennly*, 264 Ga. at 356 (1). See *Fried v. U. S. Fidelity & Guar. Co.*, 192 Ga. 492, 495 (15 SE2d 704) (1941); *Dixie Roadbuilders*, 318 Ga. App. at 231 (2). The conditions of employment need not be the sole cause of the employee's injury; rather, the employment conditions need only be a "contributing proximate cause" to the injury sustained. See *Thornton v. Hartford Acc. & Indem. Co.*, 198 Ga. 786, 787 (32 SE2d 816) (1945). See also *Ga. Farm Bureau Mut. Ins. Co. v. Troupe*, 154 Ga. App. 108, 109 (1) (267 SE2d 834) (1980) (in case involving dispute over no-fault automobile insurance coverage, court notes distinction between "contributing proximate cause" and "sole cause").

In evaluating whether an accidental injury is compensable, we must defer to the factual findings of the Appellate Division of the State Board of Workers' Compensation (the "State Board") if there is any evidence to support them. *The Medical Center, Inc. v. Hernandez*, 319 Ga. App. 335 (1) (734 SE2d 557) (2012). Moreover, "[w]hether an injury arises out of and in the course of employment is generally a mixed question of law and fact." *Lee v. Sears*, 223 Ga. App. 897 (479 SE2d 196) (1996). Significantly, however, where the material facts are not in dispute, the question whether an injury arises out of and in the course of employment is a

4

question of law. See id.; *Thornton v. Hartford Acc. & Indem. Co.*, 198 Ga. 786, 795 (1) (32 SE2d 816) (1945). And "erroneous applications of law to undisputed facts, as well as decisions based on erroneous theories of law, are subject to the de novo standard of review." (Citation and footnote omitted.) *Renu Thrift Store, Inc. v. Figueroa*, 286 Ga. App. 455, 456 (649 SE2d 528) (2007). Here, the material facts are undisputed, and the issue is the application of the law to those facts to determine whether Chambers' injury arose out of her employment. Thus, contrary to the conclusion reached by the majority, the proper standard of review is de novo.

When that standard of review is applied in the present case, it is clear that the State Board and superior court erred in concluding that Chambers' injury did not arise out of her employment. This is because the undisputed record before us demonstrates that the conditions of Chambers' employment were a contributing proximate cause to her knee injury as a matter of law. Specifically, the facts show that on the day of the accident, Chambers, an EMT and firefighter, was working a 24-hour shift and had returned to the fire station after responding to an emergency call. Chambers was seated at a desk in the station when her supervisor approached and asked her to get up from the desk so that he could complete some paperwork. One of Chamber's job duties was to carry out the instructions of her supervisor, and she immediately stood

5

up from the desk. As she rose from the desk, her left knee made a loud popping noise and she felt instant pain, signaling a knee injury that impaired her ability to carry out her work duties and ultimately required surgery.

As this record demonstrates, Chambers injured her knee as she rose from a desk at the express direction of her supervisor, as she was required to do in accordance with her job duties. In this respect, the State Board found that Chambers' supervisor "asked [her] to get up from the desk so that he could use it," and that Chambers complied and injured her knee. Thus, Chambers' supervisor directed Chambers to undertake the very movement that resulted in her knee injury. When a supervisor expressly directs an employee to undertake a specific physical activity, and the employee is then injured while carrying out that very activity, there is a sufficient causal connection between the conditions of employment and the resulting injury to warrant compensation, no matter how mundane the physical activity itself (i.e., walking, standing, etc.) may be. See, e. g., *Harris v. Peach County Bd. of Commrs.*, 296 Ga. App. 225, 228 (674 SE2d 36) (2009) (employee's knee injury, which resulted from her reaching down to pick up her personal medication off the workplace floor, was compensable, where, among other things, "her supervisor required and expected

6

her to remove the pill from the floor").[1] Any other result would turn the principle that the Worker's Compensation Act is to be "liberally construed to provide coverage to the worker" on its head. *Gassaway*, 280 Ga. App. at 354.

It is true that Georgia courts have stated that an employee's injury is not compensable if the injury "results from a risk to which the employee would have been equally exposed apart from any condition of employment," and that "the injury does not arise out of the employment where the causative danger is not 'peculiar to the work' in a way that causally connects the employment to the injury." (Citations and punctuation omitted.) *Chaparral Boats, Inc.*, 269 Ga. App. at 343 (1). Interpreted too expansively, however, these principles would eliminate from compensation a large number of injuries sustained at work simply because the claimant might perform the same physical activity outside of the workplace.[2] Where, as in the present case,

---

[1] Neither *Chaparral Boats, Inc. v. Heath*, 269 Ga. App. 339 (606 SE2d 567) (2004), nor *St. Joseph's Hosp. v. Ward*, 300 Ga. App. 845 (686 SE2d 443) (2009), cited by the majority, involved a supervisor directing the employee to undertake a specific physical activity that resulted in the employee's injury.

[2] Notably, *New Amsterdam Cas. Co. v. Sumrell*, 30 Ga. App. 682 (118 SE 786) (1923) was the first Georgia case setting out the principles that an injury is not compensable if it "comes from a hazard to which the workmen would have been equally exposed apart from the employment," and that "[t]he causative danger must be peculiar to the work, and not common to the neighborhood." Id. at 688 (2), quoting *In re Employers' Liability Assur. Corp.*, 102 NE 697 (1) (Mass. 1913). In

7

an employer through its agent expressly directs an employee to undertake a specific physical activity, and the employee is then injured while carrying out that very activity, then the "causative danger" faced by the employee is not independent of the employment relationship, and there is a straightforward causal connection between the employment and the injury justifying compensation.

For these combined reasons, the evidence demonstrates that Chambers' knee injury arose out of and in the course of her employment as a matter of law. Consequently, Chambers is entitled to workers' compensation benefits, and the State Board and superior court erred in reaching the opposite conclusion. Because I would reverse the judgment entered in favor of Chambers' employer, I respectfully dissent.

I am authorized to state that Judge Miller joins in this dissent.

---

*New Amsterdam*, a traveling salesman died after running over a dog while driving alone at night, id. at 686 (2), and it was in that unusual context that the court discussed these principles. Id. at 688 (2). Other early cases discussing these principles also involved unique factual circumstances. See *Thornton*, 198 Ga. at 787-795 (traveling salesman slipped and fell while returning to hotel after dinner); *Fried v. U.S. Fid. & Guar. Co.*, 192 Ga. 492, 493-496 (15 SE2d 704) (1941) (employee died after entering the place of business of a third person for the purpose of collecting a bill owed to his employer and engaging in disorderly conduct at the office). These early cases from which these principles originated are a far cry from the situation where an employee sustains an injury while undertaking some physical activity at the workplace consistent with her job duties.